Burks, J.,
delivered the opinion of the court.
After the affirmance by this court of the decree of the circuit court of Fairfax county, in the case of Cody v. Conly & others, reported in 27 Gratt. 313, et seq., and within three years after said affirmance, the present appellant, Rosa A. Connolly, one of the heirs and next of kin of Edmund Connolly, deceased, presented her bill to the said circuit court, praying a review and reversal of the decree aforesaid, which established, on the verdict of a jury rendered on the trial of the issue directed, that a certain writing set out in the record, which had been admitted to probate in the county court of Fairfax county, was the true last will and testament of the said Edmund Connolly, deceased, and praying further that an issue be ordered to be tried by a jury to ascertain whether any, and if any, how much of the said writing was the true-will of the said Edmund Connolly, and that said writing be can-celled and declared void, Ac.
*659 The record of the original suit is referred to and made 63 _ a part of the bill, and the prayer for review and reversal of the decree, and for an issue, is based on grounds:
1st. That the complainant, as one of the heirs and distributees of the decedent, Edmund Connolly, had a direct interest in the subject-matter of controversy in said suit, and should have been a party thereto; that she was an infant at the commencement and during the pendency of the suit, was not a party, and was not represented therein either by guardian ad litem or otherwise.
The record does not show that any guardian ad litem was appointed to represent her, or that any answer was ever filed for her, or that any one ever appeared for or represented her in the cause, although she was named as a party defendant in the bill, and the process was returned “executed by posting copies on door of residence, no person being found there.”
2d. That since the decree and affirmance thereof by this court she has discovered evidence that would prove that the said writing, admitted to probate as the last will and testament of Edmund Connolly, deceased, is not.in his handwriting, and is a forgery, a pretence, and a fraud, of which Margaret Connolly (the widow of said decedent, and a party to the suit) had notice, and in which she participated; that she has discovered that the said paper is in the handwriting of one Thomas Kerans, and was written by him after the death of the said Edmund Connolly; that said Kerans being ill and expecting to die, did, on the 26th day of November, 1876, (which was after the affirmance of the decree aforesaid by this court), send for the Rev. Father J. B. DeWolf to receive his last confession, and did then confess that he wrote the said paper after the death of the said Edmund Connolly, and requested the aaid DeWolf to give to the parties interested information of the fact: and believing he was about to die, executed a paper in the following words:
*660 “ Lewensville, Nov. 26,1876.
“I certify on oath that I wrote, after the death of Edmund Connolly, the will that was supposed to be written by Mr. Connolly himself.
“Thomas Kerans.”
That she can prove the fact that the paper admitted to probate aforesaid is not in the handwriting of the said Edmund Connolly, but in the handwriting of said Kerans, and was written after the death of said Edmund Connolly, by evidence not known at the time of the hearing and decision of the aforesaid suit, and which could not have been discovered before said hearing by the use of the most extraordinary diligence; that Kerans did not die, as he expected, at the time.of the confession, and is now living and «can be.required to testify.
The bill was sworn to by the complainant; and, on being tendered, the circuit court refused liberty to file it, and from this order of refusal the present appeal was allowed.
That there may be an appeal from such an order, is decided in Lee’s infants by next friend v. Braxton, 5 Call. 459; Williamson v. Ledbetter, 2 Munf. 521.
If the circuit court of Fairfax had jurisdiction, as a court of equity, to review the decree and proceedings complained of, there can be no doubt, we think, that liberty ■should have been granted to file the bill tendered. The complainant was an infant, not really a party to the suit, though named in the bill, being unrepresented by guardian 'ad litem or otherwise, and yet, in such a proceeding, the ■•decree unreversed was to her prejudice, and this alone •would seem to be a sufficient foundation for the review asked; but, in addition, the after-discovered evidence, in -ordinary cases, would warrant the filing of the bill. All the requisites of a bill based on this ground are found in the bill of the appellant. 1. The evidence was discovered *661 after the decree was rendered and affirmed. 2. It could . not have been discovered before by the exercise of reasonable diligence. 3. It is material, and such as, if ought to produce, on another trial of the issue, a different result on the merits. 4. It is not merely cumulative.
A bill founded on after-discovered evidence, with the requisites just stated, may be filed to review a decree even after it has been affirmed by an appellate court. J. B. Campbell’s ex’ors v. A. C. Campbell’s ex’or, 22 Gratt. 649, and cases cited; Singleton v. Singleton & others, 8 B. Monroe, 340.
But it is contended by the learned counsel for the appellees, that on a bill filed under our statute to impeach the validity of a will, which has been admitted to probate in an ex parte proceeding, the court exercises the functions of a court of probate merely, and not of a court of equity, and that its jurisdiction is exhausted when the jury have rendered a verdict on the issue, and the court, approving the same, has pronounced its decree thereon; and hence, that a bill of review, which is a remedy appropriate only to courts of equity in the exercise of their ordinary powers, will not lie to correct errors in such a case.
There is no doubt that the statutory proceeding was designed as a secondary or final probate, and that the verdict of a jury on the issue prescribed is an essential feature in such proceeding. It is the verdict which ascertains and determines “whether any, and if any, how much of what was offered for probate be the will of the decedent.” But the court, though limited in its functions, is still a court of equity, and acts as such to the extent of its powers over the subject confided to it by the statute. The proceeding is commenced by bill, denominated in the act a “bill in equity.” It must be framed as any other bill in equity would be framed, except that it must be confined in its aim and object to the specific relief contemplated by the statute— namely, the determination by a jury, on an issue to be di *662 rected and tried, of the validity or invalidity of the testa- ■ . . mentary. paper or papers which are drawn in question. to convene the parties issues, as in other cases in equity suits, and the pleadings are of the same nature. The court, by decree, settles and directs the issue. The trial may be had at the bar of the chancery court, or in some court of common law • but wherever had, the chancery court alone in which the suit is pending can grant a new trial. Lamberts v. Cooper’s ex’or & als., 29 Gratt. 61, 66, and cases cited.
Now, ail the functions performed by the .court seem to be, in their nature and the mode of exercising them, such as appertain to a court of equity. If errors are committed in the progress of the case, it cannot be doubted that the court may correct them before the cause is terminated, and should correct them in the mode and according to the practice of courts of equity. If, after verdict, it should appear that all the parties in interest are not before the court, would not the court set aside the verdict and require an amendment of the pleadings, as in other equity suits, so as to bring the omitted parties into the cause ? Or if, after verdict, and before decree thereon, it were ascertained that new evidence had been discovered, which in a court of equity, in ordinary cases, would warrant a bill of review after final decree, would the court hesitate to set aside the • verdict and order a new trial ?
It results from what has been said, that in our opinion the court in which a bill is filed under the statute to impeach or establish a will is not a mere court of probate, but something more. It is a court of equity, and though its powers over the subject confided to it are limited, yet it may, on a proper bill, review and correct errors in its proceedings after final decree in the cause.
The precise question now decided has never before been presented to this court for determination, as far as we know. No decision of this court on the very point has been cited in argument.
*663 In Coalter’s ex’or & others v. Bryan & others, 1 Gratt. 18, on a bill filed to contest the validity of certain papers which had been admitted to probate as the will of Randolph, of Roanoke, the prayer was for an issue to be made up and tried to test the validity of these testamentary papers, and that they be declared invalid; and further, that certain parties, who, as alleged, had possessed themselves of the estate of the decedent, might be decreed to account for and surrender it; and for general relief.
This court held, that so much of the bill as sought relief beyond the vacation of the contested instruments should be dismissed.
The decision was based on the ground, that the sole function of the suit under the statute was to test the validity of the will or wills which had been admitted to probate, and when the alleged testamentary papers were declared invalid and null, it was not competent for the court to proceed in that cause to make any further decree.
This was the extent of the decision, and we do not question its soundness. But in the opinion of the court, delivered by Judge Baldwin, it is said, that the jurisdiction of the court in such a case “ is merely that of a court of probal e, and to be exercised not by the court, but by a j ury under its supervision,” The remark in its broad terms was not necessary to the decision of the question presented. It must be taken in reference to the subject matter; and although the functions of the court are limited to matters of a probate nature, it by no means follows that those functions are not to be performed by the court acting as a court of equity, and clothed with all the powers of a court of equity, to give and secure the specific relief authorized by the statute. See also what is said by the same judge in Malone’s adm’r and others v. Hobbs and others, 1 Rob. R. 346, 410.
It is very true, that the court is not empowered to give *664 &enera^ re^e^ as in ordinary cases within the jurisdiction of equity tribunals, but it may and should exert its powers secure the specific relief designed by the statute, and mafce the remedy provided effectual for the promotion of justice and the prevention of wrong.
The decisions in Wills v. Spraggins, 3 Gratt. 529, and Schultz v. Schultz, 10 Gratt. 358, cited in argument, are not perfinent to the question immediately under consideration. These cases merely decide the general proposition, that when a paper is propounded for probate to the proper court by the nominated executor, or by a devisee or legatee, and there is a sentence of the court fairly obtained and pronounced on the merits, excluding the paper from probate, such sentence of exclusion is conclusively binding upon all claiming under the paper, though they were infants at the time and not parties to the proceeding.
It is also well settled, that the sentence of a court having jurisdiction of the subject matter, admitting a will to-probate, is conclusive as long as such sentence remains in force. A judgment of this nature is classed among those which, in legal nomenclature, are called judgments inrem. Until reversed, it binds not only the immediate parties to the proceeding in which it is had, but all other persons and all courts. Ballow v. Hudson & others, 13 Gratt. 672, 682, and cases cited.
Provision was made, however, by the legislature as early as 1785, for contesting by bill in chancery the validity of a paper which had been admitted to probate as a will in an ex parte proceeding, but no such provision was made for establishing a will which had been rejected in such proceeding. See the statute, 1 Rev. Code (1819), ch. 104, § 13. It was under this act that the decisions supra in 3 Gratt. and 10 Gratt. were made, which left a person interested, under a will which had been offered for probate and rejected by a sentence fairly obtained and pronounced on the merits, conclusively bound by such sentence, although not *665 a party to the proceeding in which it was rendered. This r 0 , defect in the law, for such it certainly was, was remedied by amendment at the revisal of 1849, whereby a interested, not a party to the primary probate proceeding, was authorized, within the time prescribed, to file a bill to establish a will which had been rejected, as well as to impeach one which had been admitted to probate. The section was adopted in the precise form in which it was reported by the revisors, and has not been since changed. Code of 1849, chap. 122, § 34; Code of 1873, chap. 118, §34.
In their report, the revisors say, “ The present statute (1 R>. Code, chap. 104, §13) was the subject of judicial decision in Wills v. Spraggins, 3 Gratt. 529. It is defective, when a will is improperly rejected, in leaving a person interested, who was no party to the proceeding, without any means of redress. It is no more than justice, that he should have the like remedy where a will is improperly rejected, as where it is improperly established. The section as above proposed puts him'on the same footing in the two cases.” Report of Revisors, 632 (note).
Thus it appears, that the present state of the law of probate in Virginia is, that a sentence pronounced by a court having jurisdiction, whether it be a sentence admitting a paper to probate, or excluding it from probate, as long as it remains in force, binds conclusively not only the immediate parties to the proceeding in which the sentence is had, but all other persons, and all other courts; and the principle applies as well to a sentence represented by the verdict of a jury and decree thereon in the proceeding by bill under the statute as to a sentence pronounced in any other authorized probate proceeding!
Apply the rule to the present case, and what result have we?
The appellant is bound by a sentence rendered in a proceeding had while she was an infant, and, although inter- *666 es*e<^ *n resu-^> s^e was not a party to such proceeding, and was without a representative.
Since the sentence, she has discovered the fact, which cou]f] n0t have been sooner discovered by the use of the most extraordinary diligence, that the paper established in that proceeding as the will of her uncle was forged after his death by a man whose name is given in the bill, and who makes a written confession of his crime under circumstances of great solemnity. The statements of her bill, on a motion for leave to file it, must be taken as true. Her prayer is, that the former proceedings may be opened, and that she may be allowed the' opportunity, hitherto not afforded her, of being heard, and that she may be permitted to make good her allegations and have the spurious paper annulled.
Is it possible that the law provides no remedy, can give no relief in such a case? Is the appellant, under the circumstances shown by her bill, to continue bound, and to be forever barred of her rights, without being heard, or having an opportunity of being heard? We think not. As said by Judge Christian in Underwood v. McVeigh, 23 Gratt. 409, 418, “it lies at the very foundation of justice that every person who is to be affected by an adjudication should have the opportunity of being heard in his defence, both in repelling the allegations of fact and upon the matter of law”; and in the language of an eminent judge of a sister state, “ we take it to be an indisputable principle, essentially inherent in' every enlightened system of jurisprudence, that every person who is bound by a proceeding to which he is no party and had no opportunity of becoming a party or of making a defence, and in which he is unrepresented, must, if he had such interest in the subject as required or authorized him to be made a party, be entitled to some mode of reversing the sentence.” Marshall (Chief Justice), in Singleton v. Singleton & others, 8 B. Mon. R. 340, 345.
*667 That mode, as has already been pointed out, is the one adopted by the appellant in this case, and Singleton v. Singleton & others, supra, decided by the court of of Kentucky in 1843, seems to be a direct authority in support of it. The Kentucky statute concerning wills, enacted in 1797, was taken substantially from our act of 1785, and sections 10 and 11 correspond with sections 12 and 13 of chapter 104 of the Revised Code of 1819.
A bill was filed under the 11th section of the Kentucky act contesting the validity of a writing which had been admitted to probate as a will, and there was a decree on the verdict of a jury against the validity, which, on appeal, wras affirmed by the court of appeals. Afterwards two infant grandsons of the supposed testator, claiming to be •devisees, filed their bill, showing their interest under the alleged will, and charging that they had not been made parties to the bill and proceedings in which the decree annulling the will was rendered; that, being infants of tender years, they had no notice or knowledge of said proceeding, had no opportunity of defending and protecting their rights, and were seriously injured by the decree. They averred that the writing which had been vacated was the true last will and testament of their grandfather, and prayed that the decree might be reviewed and reversed and opened, and that they might be allowed to contest the matters set up in the original bill.; that the issue, whether the said writing was the true will of their grandfather, might be tried by a jury, so that they might have an opportunity of maintaining its validity and protecting their rights under it, &e.
The cause being heard on demurrer to the bill, and a plea relying on the former decree and its affirmance by the appellate court as a bar to relief, there was a decree dismissing the bill, which, on appeal, -was reversed by the court of appeals.
It was held by that court that the decree against the *668 va^*ty of the will operated in rem, and was binding on all persons, whether parties to the suit or not, until re-by legal proceedings for that object; that all parties interested should have been brought before the court, and that the appropriate and only remedy for the omitted parties was by a bill of review or supplemental bill, in the nature of a bill of review, to reverse the decree complained of, set aside the verdict of the jury, and have a new trial of the issue.
The reasons on which the decision was based are very clearly and forcibly expressed in the opinion of the court,, delivered by the Chief Justice (Marshall), to which we beg. to refer.
The case in judgment, it will be perceived, presents a much stronger claim to relief than the Kentucky ease in. the circumstances of after-discovered evidence—a feature that did not exist in the latter case.
Upon the whole matter, we are of opinion that the circuit court erred in refusing leave to the appellant to file-her bill; and the order of refusal will, therefore, be reversed and the cause remanded, with direction to receive-the bill, and for further proceedings therein, in order to-final decree.