STAPLES, J.
This is an appeal from a decree of the circuit court of Buckingham county.
A brief statement of the facts is essential to a proper understanding of the matters in controversy. Charles Perrow, Sr., died in the year 1834, having first made and pulished his last will and testament which was admitted to probate in the county court of *429 Buckingham on the 13th day of October of that year.
There were no subscribing witnesses to the will, nor was it in the handwriting of the deceased. It was proved, however, that the signature to the will was in his handwriting, and upon that testimony the paper was admitted to probate generally.
It was conceded in the argument here, certainly it was not seriously controverted, that upon the evidence before the county court, the will, although valid as a will of personalty, was not so with respect to the realty.
It was insisted, however, that the admission of the paper to probate generally is conclusive evidence, of the validity and due execution of the instrument, with respect to both real and personal estate, and that it can *never be called in question except in the mode pointed out by the statute, upon an issue of devisavit vel non; and this not having been donp, the probate is binding upon all persons and in all courts.
This proposition, as involving a general rule of law, is sustained by an uniform current of Virginia decisions, and is not seriously disputed by the opposing counsel. Robertson’s v. Allen. 11 Gratt. 787, and cases there cited. But it is said that this case is taken out of the influence of the general rule by the facts and circumstances attending it, now to be stated. It appears that on the 13th of October, 1834, the day on which the will was admitted to probate, in the county court, a bill was filed in that court, by the children and heirs of the testator, or rather by those who were his heirs if his will was invalid as a will of real estate, in which it was stated that the decedent had died intestate, as to his real estate; that it was subject to distribution among his heirs; and that a certain Edward W. Sims, had qualified as administrator with the will annexed; and among other things, asking for partition among those entitled. An infant grandchild of the decedent, and the administrator with the will annexed, were made parties defendant, both of whom answered, the infant grandchild by guardian, and the administrator in person, expressly admitting all the allegations of the bill, and agreeing to the partition of the property. On the same day, the 13th of October, a decree was entered by consent, before the same justices who admitted the will to probate, appointing commissioners to make partition of the real estate among the heirs. And although the decree does not aver in so many words, the decedent’s intestacy as to his real estate, it refers directly to the bill and answer in which that admission is made, and its proceeds to dispose of the realty, precisely as in a case of intestacy.
*The commissioners subsequently made a report showing they had made partition of all the lands of the decedent, except a tract containing what was then known as the State, or Big “Quarry,” which they recommended should be reserved for the use of the heirs. This report was confirmed at the October term, 1835. It further appears that the “Quarry” was operated by the heirs on joint account for a short time; but not proving profitable, it was sold under a decree of the same court, when a certain George M. Payne became the purchaser; and he selling to Edward Sims, the conveyance was made to the latter, by the commissioner, under the sanction of the court. It further appears that Sims continued in the use and possession of the property till 1841, when he conveyed it in trust for the benefit of his creditors. ^ A suit was afterwards instituted in the' circuit court of Buckingham to enforce the lien of the trust deed. A sale was made when the appellants and W. T. Scruggs became the purchasers. A conveyance was made to them under the decree of the court, and they have ever since remained in possession of the property.
It thus appears that for a period of more than forty years, the property in controversy has been held by title derived from the heirs of Charles Perrow, sold and conveyed for valuable considerations, to successive purchasers under decrees of courts, without a suspicion of any informality in the title until the suit was brought by the appellees claiming as devisees in remainder under the will of Charles Perrow.
That will as has been seen was not executed as a will of lands. It was so understood by every body at the time. The suit for partition was brought under that idea. The decree of, the court entered on the same day immediately after the order of probate, proceeded on the same ground. George W. Payne, one of the ^witnesses to prove the handwriting of Mr. Perrow, was the counsel of the heirs in the suit for partition, and was himself a purchaser of the land, as was also the administrator with the will annexed. It is therefore perfectly clear, that all concerned —parties, counsel, court, and witnesses understood that the will was valid, only as a will of personal estate, and to that extent only was the probate operative and effectual.
The question therefore is whether under such circumstances, consistent with the rules of law, and the decisions already cited there is any mode of avoiding what is manifestly a misprision of the clerk.
It will be observed, the certificate or order of the court does not state in express terms, that the will was admitted to probate, as a will of real estate, but merely that “it is admitted to record.” The words although broad enough to include a will of both real and personal property according to all the decisions of this court, may be satisfied by treating the'paper as a will of , personalty. The question is as to the meaning of order. It is one, purely of construction.
In the exposition of deeds, any and all cotemporaneous writings of the parties relating. to the same subject, may be looked to for the purpose of ascertaining the meaning and proper interpretation of the instrument, which is the subject of controversy. And this rule is not confined to cases of doubt and ambiguity, but is applied whenever the proper construction of a writing is involved.
I cannot see why the same principle ought *430 not to be applied to a record, which may be modified, changed, annulled or explained, at any time during the term of the court. One part of a record is of equal verity and effect, with every other part, and the whole must be looked to, for a right understanding of all the parts. Suppose the court on the same day, or any subsequent *day during the term, had entered an order
declaring that the sentence was to be construed as relating to the personal estate only? It will hardly be insisted the courts could refuse to give effect to such a modification. Here we have a decree entered by the same court on the same day, and no doubt within a few minutes afterwards, explaining, qualifying the order of probate as completely and effectually as the most positive and direct order could have done. According to the English practice the decree recites the bill, answer and pleadings. With us the practice is different. The decree simply refers to the pleadings. But this court has held that the bill and answer are parts of the record, and may be looked to to explain the decree. Walker’s ex’or v. Page, 21 Gratt. 636. In this,case, whether we look to the bill and answer, or to the decree only, in connection with the order of probate, we see at once the will was admitted to record simply as a wrll of personal estate, and was so designed to be. It has been said, however, that the decree was entered by consent, and was probably never seen by the justices. It is equally probable, they never saw the sentence of probate; and did not pay the slightest attention to its language.
The question is not, however, what the individual justices may have seen or understood, but what is the language of the record? Each and every part of it. is of absolute verity, and must be presumed to express the actual decision and opinion of the court. '
It has been further said, and much stress has been laid on this point, that the decree was rendered in a collateral proceeding, having no sort of connection with the sentence of probate. In answer to this, it is sufficient to say, that the parties who set on foot the probate of the will, were the very same who asked for *the decree. Both proceedings were before the same justices, and obviously the one immediately succeeded the other.
The bill while stating the intestacy as to the real estate, states at the same time the admission of the will to probate, and as has been seen, the person who qualified as administrator with the will annexed, and in whom the legal title to the land, and the control of the rents and profits .were vested by the will, filed his answer, agreeing to the partition, and plainly showing his understanding of the sentence of probate.
The decree therefore was not in' a collateral proceeding, and if it were, it would not necessarily effect the result, unless there was some suggestion of fraud, surprise, or mistake.
There is another important fact, not yet adverted to, which ought to be considered in this connection. At the time of these transactions, the law required whenever the real estate, or the rents and profits were placed under the control of the executor, the executors bond should contain a provision securing the proper administration of the fund. In the case before us the order of probate states, that the administrator entered into and acknowledged a bond, with security conditioned as the law directs. The bond of the administrator with the will annexed, makes no sort of reference to the real estate. It binds him only to administer the goods, chattels, and credits, which may come to his hands, and to pay all the legacies specified in the will, as far as the said goods and chattels and credits were concerned.
Bearing all these facts and circumstances, in mind, we are led irresistibly to the conclusion that the sentence of probate was understood and intended to apply to the will of personal estate exclusively, and is to' be so construed if we are permitted to look at the whole *record. instead of apart. If two decrees, entered in the same court, the same day, between the same parties, in relation to the same subject matter may be looked into to explain the meaning and effect of either, it is difficult to see why an order of probate, and a decree entered' under the same circumstances may not be looked to for the purpose of ascertaining and determining the operation and effect of each. The appellees have no just cause of complaint in all this for it has long been settled.
A sentence of total rejection by a court, of probate fairly obtained on the merits of a paper propounded as a will, is conclusively-binding upon the legatee, notwithstanding he was an infant at the time it was pronounced. and was no party to the proceedings, and the paper thus rejected cannot again be propounded as a will. Schultz v. Schultz, ex’or, 10 Gratt. 358; Connally v. Connally, 32 Gratt. 657.
The appellees are not defrauded nor injured. Their claim is based upon the assumption that this is a valid will of real estate, which as we have seen, is withoutanyfoundation. Their own parents who are the children and heirs of the decedent, upon the supposition of an intestacy received the property in. controversy, sold it for a valuable consideration, and it is now in the possession of bona fide purchasers, and has so been held for more than forty years. What has become of the other real estate, partitioned among the heirs, does-not appear. In all probability, it' has long since passed into the hands of bona fide alienees. If at this day the will is to be established as a will of real estate, the effect may be to disturb their titles also, and to bring mischief and irretrievable loss to. numerous other parties. Under such circumstances, if any case ever justified it, the ciiurt should be astute to uphold and maintain what has been done, and not to break down and *destroy. While on the one hand the mere hardship of a particular case can never justify a court in disregarding a positive principle of law, it is equally true, the court should never become *431 the instrument of gross injustice and injury, if such a result can be avoided consistent with established rules and precedents.
My opinion is therefore the decree of the circuit court must be reversed, and the bill dismissed.
MONCURE. P., and CHHR1STIAN and ANDERSON. Js., concurred in the opinion of'Staples, J.
BURKS, J.
I have been inclined to affirm the decree in this case. I have had doubts, whether the sentence of probate could be affected or construed by resort to the action of the county court in the chancery proceedings, which were distinct from the probate proceeding. The case however is one of extreme hardship on the appellants, and under the very peculiar circumstances of the case. 1 will not dissent, but will acquiesce in the conclusion reached by my brethren.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the said circuit court erred in rendering the decree of the said 37th day of April, 1876, being the decree appealed from; that instead of rendering said decree the said circuit court ought to have dismissed the plaintiff’s bill, and have given to the defendants a decree for their costs. It is therefore decreed and ordered that the said decree appealed from be reversed and annulled, and that the appel-lees E. B. Eessueur and W. H. Bumpass (the in the court below) pay to the appellants their costs by them^ *expended in the prosecution appeal aforesaid here.
And this court proceeding to render such decree as the said circuit court ought to have rendered, it is decreed and ordered, that the bill of the plaintiffs be dismissed, and that, they pay to the defendants, their costs by them about their defence in the said circuit court expended. Which is ordered to be certified, &c.
Decree reversed.