Calloway v. Cooley.

---

ANNIE P. CALLOWAY *et al.* v. W. S. COOLEY *et al.*

50 743
f62 5

50 743
73 395

50 743
f81 584

1. FOREIGN WILL—*Valid Statute.* Chapter 102 of the Laws of 1879, entitled "An act to authorize foreign executors and administrators with the will annexed to convey real estate in pursuance of power contained in the will," is held to be constitutional and valid.

2. ACT—*Extent of Application.* Such act is applicable to all wills which

were executed and proved in another state or territory prior to its passage, as well as to those executed and proved after its passage.

3. WILL—*Probate*—*No Collateral Attack.* Where a will executed, proved and admitted to probate in another state is presented for record to the probate court of a county in this state, in which land belonging to the estate is situate, and such court, upon the evidence submitted, finds and adjudges that the authentication of the copy presented for record is sufficient, its adjudication thereon cannot be collaterally attacked.

## *Error from Lyon District Court.*

THIS was an action of ejectment, brought by *Annie P. Calloway* and the other surviving heirs of James Calloway, deceased, to recover 80 acres of land situated in Lyon county. At the September term, 1889, the cause was tried by the court without a jury, and the following findings of fact and conclusion of law were made:

"1. On the 25th day of December, 1878, James Calloway died, seized of the property in controversy. The plaintiffs are the only surviving heirs of the said James Calloway, deceased, and they are related to him as follows: Annie P. Calloway is his widow; Mary O. Adams, Hattie H. Lowe, Elizabeth C. Gillespie, Annie Y. Hubbard and Ruth P. Calloway are his children; James C. Bowie, Annie C. Bowie, Mary Bowie, Anna Bowie, Mary Virginia Bowie, Matilda Bowie, Thomas C. Bowie and John Ruth Bowie are the children of a daughter of said James Calloway, now deceased, who died the widow of John Bowie. The name of said deceased daughter was Frances C. Calloway.

"2. At the time of his death, and for many years prior thereto, the said James Calloway was and had been a resident of Wilkes county, in the state of North Carolina; and the said plaintiffs, at the time of his death, and ever since have been and now are, residents of said state.

"3. The said James Calloway left a will, which was duly probated in the said county and state on December 30, 1878, in accordance with the laws of said state. The George H. Brown named in said will as executor qualified as such in said county and state, and he is the same person who executed the executor's deed to the land in controversy.

"4. A paper purporting to be a copy of said will is hereto attached, marked 'Exhibit A,' and made a part hereof. Annie P. Calloway, as the widow of said James Calloway, knew

the contents of said will, and knew of the probate thereof, at the time it was probated as aforesaid; but she has never in any manner dissented from the provisions of said will, as required by chapter 117 of Battle's Revisal of the Laws of North Carolina, by which law every widow is deemed to have assented to her husband's will unless within six months after the probate thereof she dissents therefrom."

The will above mentioned was duly executed in legal form, and made certain specific bequests to his wife, children, and grandchildren, and gave to his wife all of the personal property which belonged to him at his death, excepting money and evidences of debt, and directed the executor to collect all debts and to proceed to sell all his lands upon such time and terms as he might in his discretion think best, "whether said lands may be situated in the states of Kansas, Missouri, or North Carolina," and that all the proceeds realized, after making the disbursements and payments specially directed and paying the expenses of administration, should be distributed in equal proportions among his wife and daughters. George H. Brown, of Statesville, North Carolina, was appointed his executor, with authority to carry out the terms of the will, and to make title to the real estate which he might convey, and granting him all the necessary rights and powers of execution. Attached to the will were the proceedings probating the same, on December 30, 1878, together with the qualification of the executor. The following authentication is attached to the will, which appears in the record:

"STATE OF NORTH CAROLINA, WILKES COUNTY, ss.

"I, A. H. Horton, judge of probate in and for the county aforesaid, do certify that the aforesaid is a full and true copy as taken from the original papers and records on file in my office, in the matter of the will of James Calloway, deceased.

"I further certify, that the clerks of the superior courts of North Carolina are judges of probate, and that the seal of the superior court is used as the seal of the probate court in the respective counties.

"In testimony whereof, I have hereunto set my hand and affixed the seal of my office, at office in Wilkesboro, December 30, 1878.                    A. H. HORTON,
                                    *Clerk Superior Court and Judge of Probate.*"
[ Seal of "Wilkes Superior Court of Law, North Carolina." ]

"STATE OF NORTH CAROLINA.

"I, Jesse F. Graves, judge of the superior court of North Carolina, elected for and residing in the seventh judicial district, do certify that clerks of the superior courts are by virtue of their office judges of probate for their respective counties, having jurisdiction over the probate of wills and of the recording thereof; that Wilkes county is in the seventh judicial district; that A. H. Horton is to me personally known, is, and was at the time of signing the foregoing certificate, the clerk of the superior court of the said county; that his signature to the foregoing certificate is genuine, the seal attached is the seal of said court, and the certificate is in due form of law.

"Done at chambers, at Mt. Amy, N. C., January 13, 1879.
J. F. GRAVES, *Judge Seventh District.*"

Here follows certificate of the governor of the election and qualification of Judge Graves, and that his signature and acts are entitled to full faith and credit.

"5. On February 19, 1879, the paper hereto attached as exhibit 'A' was presented to the probate judge of Lyon county, Kansas, with the authentication appearing to it as such exhibit and none other, and the said probate judge, upon such presentation of said paper by George H. Brown, the person named therein as executor, and without other proof than said paper and said authentication, ordered said paper to be admitted to record in said court as the duly-authenticated copy of the will of said James Calloway. A copy of said order is hereto attached, marked exhibit 'B,' and made a part hereof.

"Again, on November 1, 1888, a paper purporting to be a duly-authenticated copy of the said will of the said James Calloway, was presented to the probate court of Lyon county, Kansas, a copy of which, with its authentication, is hereto attached, marked exhibit 'C,' and made a part hereof. Upon the presentation of said paper so authenticated, the said probate court ordered said paper to be admitted to record as the duly-authenticated copy of said will of said James Calloway, without other proof than said paper and said authentication. A copy of said order is hereto attached, marked 'Exhibit D,' and made a part hereof.

"No other or further step was ever taken in any probate court in the state of Kansas to authorize or legalize the sale of the lands belonging to the estate of the said James Callo-

way, deceased. No letters testamentary or of administration were issued in the state of Kansas on said estate. The plaintiff Annie P. Calloway was never called upon to, and she never did, elect to take under the will of her deceased husband in the state of Kansas."

The following is exhibit "B," above referred to:

"THURSDAY, February 19, 1879.
*"In the matter of the estate of James Calloway, late of Wilkes county, N. C., deceased.*

"Comes now George H. Brown, executor of the last will of said deceased, and presents to the court a paper in writing, purporting to be an authenticated copy of the last will and testament of said James Calloway, late of Wilkes county, state of North Carolina, executed, proved and admitted to probate according to the laws of the state of North Carolina, relative to property in this county and elsewhere in this state, and makes application to have the same admitted to record in this court.

"Upon the hearing of this application, the court finds that said paper is a duly-authenticated copy of the will of said James Calloway, deceased; that it has been executed, proved and admitted to probate according to the laws of the state of North Carolina, and that the authentication thereof is in due form of law, and entitled to full faith and credit, and that said will relates to property in this county and state.

"It is therefore ordered that said authenticated copy of said will of said deceased be, and it is hereby, admitted to record in this court, and duly recorded; and that said will so recorded shall have the same validity as wills made in this state, in conformity with the laws thereof.

L. B. KELLOGG, *Probate Judge."*

The following is exhibit "C," referred to in the fifth finding of fact:

"STATE OF NORTH CAROLINA, COUNTY OF WILKES, ss.

"I, Milton McNeil, clerk of the superior court of Wilkes county, state of North Carolina, do hereby certify, that the above and foregoing is a full, true and correct copy and transcript of the last will and testament of James Calloway, deceased, and of the probate thereof, and of all the proceedings had in relation to the probate thereof in the probate court of Wilkes county, North Carolina, before A. H. Horton, clerk of the superior court of Wilkes county, state of North Caro-

lina, at that time, by virtue of his office as clerk of aforesaid
court, judge of probate in said county and state, as the same
appears upon the original files and records in my office as
clerk of said court, and which are now, by virtue of my
office, in my sole and exclusive possession and control.

"In testimony whereof, I have hereunto set my official
hand, and affixed the seal of said court, this 25th day of Sep-
tember, 1888.                                    MILTON McNEIL,
     *Clerk Superior Court of Wilkes County, State of North Carolina.*"
     [ Seal of " Wilkes Superior Court of Law, North Carolina."]

"STATE OF NORTH CAROLINA, COUNTY OF WILKES, *ss.*

"I Milton McNeil, clerk superior court of Wilkes county,
North Carolina, do hereby certify, that under the laws of
North Carolina as they existed in the year 1878, and as they
still exist, do not require the seal affixed to the signature
or certificate of the probate judge or clerk of the superior
court, except to the letters testamentary.

"Given under my hand, at office in Wilkesboro, N. C.
                                              MILTON McNEIL,
          *Clerk Superior Court, Wilkes County, North Carolina.*"

"STATE OF NORTH CAROLINA, COUNTY OF ———.

"I, Jesse F. Graves, judge of the superior court of North
Carolina, elected for and residing in the ninth judicial district,
aforesaid state, and being the presiding justice aforesaid dis-
trict, which includes within its boundaries the county of
Wilkes in said state, do certify that clerks of the superior
courts are by virtue of their office custodians of all files, and
records of, in matters of administration of the estates of de-
ceased persons, and of the probate of wills, and of the rec-
ord thereof; that Milton McNeil, to me personally known, is,
and was at the time of signing the foregoing certificate, the
clerk of the superior court of Wilkes county, state of North
Carolina; that his signature to the foregoing certificate is
genuine, and that the seal attached to said certificate is the
seal of said court, and that the certificate is in due form of
law.                                             J. F. GRAVES,
          *Judge of the Superior Court, Ninth Judicial District.*"

Here follows certificate of governor of the election and
qualification of Judge Graves, and that his signature and acts
are entitled to full faith and credit.

The following is exhibit "D," referred to in the fifth find-
ing of fact:

"NOVEMBER 1, A. D. 1888.

*"In the matter of the estate of James Calloway, late of Wilkes county, state of North Carolina, deceased.*

[Authenticated copy of will.]

"Came, this 1st day of November, A. D. 1888, George H. Brown, executor of the last will and testament of said deceased, by C. N. Sterry, his attorney, also S. B. Warren, the owner of certain real estate sold under the provisions of said will by Kellogg & Sedgwick, his attorneys, and presented to the court a paper in writing purporting to be an authenticated copy of the last will and testament of said James Calloway, late of Wilkes county, state of North Carolina, deceased, executed, proved and admitted to probate according to the laws of the state of North Carolina, in relation to property in this state, and made application to have the same filed and admitted to record in this court.

"Upon the hearing of said application, the court finds that said paper is a duly-authenticated copy of the will of said James Calloway, deceased; that said will has been duly executed, proved and admitted to probate in accordance with the laws of the state of North Carolina, and that the authentication thereof is in due form of law, and entitled to full faith and credit; that said will relates to property in this county and state.

"It is therefore ordered that said authenticated copy of said will so presented be, and it is hereby, filed and admitted to record in this court, and be duly recorded, and that said will so recorded have the same validity as wills made and probated in this state in conformity with the laws thereof.

J. W. PARRINGTON, *Probate Judge."*

"6. The executor, George H. Brown, after the making of the order hereto attached as exhibit 'B,' and prior to June 16, 1883, sold all the lands in Kansas belonging to the said estate, including the land in controversy, receiving therefor the aggregate sum of $21,695. On July 21, 1885, said executor filed a statement of accounts in the court of probate, in Wilkes county, North Carolina, in which it appeared that he had received property belonging to said estate from all sources of the aggregate value of $32,546, including the receipts from the Kansas lands, which account contained a description of each tract of land in Kansas, including the land in controversy, together with the amount of money received for each. In July, 1881, said executor paid to the special

legatees of said will the aggregate sum of $5,500, and in April, 1883, the further sum of $9,000, as a distribution under said will, and in April, 1884, a further distribution of $1,400; July 21, 1885, there remained in the hands of said executor, after the payment of debts, expenses, and legacies and distributions aforesaid, the sum of $78.86.

"7. On April 13, 1881, said executor filed in the court of probate, in Wilkes county, North Carolina, a complete inventory of the estate of the said James Calloway, real and personal, including the Kansas lands, with their estimated value.

"8. On October 18, 1887, said executor made final settlement in the court of probate, in said Wilkes county, North Carolina, and was discharged from his trust as such by order of said court. The plaintiffs had due notice of said settlement and discharge, the settlement and notice thereof both being in full compliance with the laws of North Carolina.

"9. The land in controversy was sold by said executor to H. E. Kelley, on June 15, 1883, for the sum of $450, which sum was the reasonable value thereof. By successive conveyances, it was transferred from Kelley to three other parties, and finally to the defendant.

"10. Neither of the plaintiffs have ever tendered in any way to the defendant, the executor, or anyone, any of the moneys received by them from the proceeds of the Kansas lands, or of the land in controversy, or any part thereof.

"11. The plaintiffs Annie P. Calloway and Hattie H. Lowe lived in Wilkes county, North Carolina, and near to the courthouse where said will was probated, and where said final settlement was made. The widow and children of said James Calloway knew of said Kansas lands, and knew that they formed a material part of said estate, and the said widow knew that said executor was making an effort to sell the same; further than this, the plaintiffs had very little actual knowledge as to the condition of said estate, or as to the executor in relation thereto. They did not actually examine the inventory filed April 13, 1881, nor did they know the contents thereof. They did not know that any of the money paid to them by the executor was the proceeds of the Kansas lands; they did not know that the executor had sold the Kansas lands until after his final settlement and discharge; they supposed that the estate situated in the state of North Carolina alone was worth the sum of $40,000. The plaintiff Annie P. Calloway accepted and received what was due under the pro-

visions of the will knowingly and intentionally, but in so doing she did not know whether such taking would affect her rights as to the property in Kansas or not; she made no inquiry upon this subject, and was not informed by anyone. The other plaintiffs accepted what they received under the will without knowing, thinking or inquiring as to the effect thereof as to their rights as to the lands in Kansas.

"12. After the final settlement by the executor, as aforesaid, and long before the commencement of this suit, the plaintiffs were all informed fully as to the facts herein stated.

"13. The defendant W. S. Cooley, at the time he purchased the land in controversy, made no examination whatever of the public records concerning the title to said land, but relied solely upon representations made to him concerning the same, and from such representations he believed in good faith that he was obtaining a good title to said land.

"14. The executor acted in good faith in the sale of the Kansas lands, and he honestly believed that all his acts in relation thereto were proper, legal, and for the best interest of the estate and heirs of said James Calloway.

"15. Upon the trial of this case, the parties introduced as a part of the evidence ' Battle's Revision,' two volumes of the code, and the session laws for the years 1873 and 1874, of the state of North Carolina, and also all the reports of the supreme court of said state, all of which laws and reports are here referred to and made a part hereof."

"CONCLUSION OF LAW.

" The defendants are entitled to recover upon all the issues in said cause, and for costs."

The court thereupon awarded judgment in favor of the defendants, to which rulings and judgment the plaintiffs excepted, and they bring the case here for review.

*J. Jay Buck,* and *J. G. Hutchison,* for plaintiffs in error.

*C. N. Sterry, T. N. Sedgwick,* and *L. B. Kellogg,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: The validity of the judgment is to be determined from the findings, as none of the testimony has been preserved. From them it appears that the title of the

land in controversy was in James Calloway, who died in North Carolina, and the executor of his will, who was vested with full power, sold the land in good faith and for a reasonable price, and accounted for the proceeds of the sale to the estate and heirs of the deceased. The Calloway heirs, without tendering or offering to restore the purchase price of the land, or any part of it, have brought this action to recover the land, contending that the sale was irregular and unauthorized. The will was executed and proved in North Carolina, and the executor, in pursuance of the authority conferred by chapter 102 of the Laws of 1879, brought a copy of it to Kansas and presented it for record in the probate court of Lyon county, where the land was situate. That court determined that it was a duly-authenticated copy of the will which had been executed, proved and admitted to probate according to the laws of North Carolina; that the authentication was in due form of law and entitled to full faith and credit; and, having found these facts, admitted it to record. The plaintiffs contest both the applicability and the validity of the statute mentioned, under which the foreign executor derived authority to sell the land. (Gen. Stat. of 1889, ¶ 2932.) It is claimed to be inapplicable, because it was enacted after the will had been executed and proved. It provides:

"Whenever, in any will, which heretofore has been or hereafter shall be executed and proved in any state or territory of the United States, power is given to the executor or administrator with the will annexed to sell or convey real estate of the testator, any executor of such will or administrator with the will annexed of the estate of the testator, duly appointed and qualified in any state or territory of the United States in which such will shall have been executed and proved, may sell," etc.

Counsel for plaintiffs in error contend that "the obvious intent of the legislature was to make the statute operative as to wills already executed but which had not yet taken effect through the demise of the testator and the proving of the will, but not to wills where the testator was already dead, and his will had taken effect by being proved according to

law, and all property rights thereunder, or that had passed by descent, had vested. The statute is to be read, 'which heretofore has been or hereafter shall be executed, and proved,' and not 'executed and proved.'" The language of the statute appears to us to be so plain, and the intention of the legislature so obvious, that there is little room left for interpretation. It is clear that it was intended to apply to all wills which had been executed and proved prior to its enactment, as well as to those which were executed and proved afterwards, and fairly covers the will in controversy.

It is contended that the statute is obnoxious to § 16 of article 2 of the constitution, because the subject of the act is not clearly expressed in its title. The title is: "An act to authorize foreign executors and administrators with the will annexed to convey real estate in pursuance of power contained in the will." It is said that the act relates to executors and administrators in other of the states and territories of the United States, while the title indicates executors and administrators of other nations. The word "foreign" is frequently used as the opposite of "domestic." In the statutes and decisions, the judgments and wills of other states are generally spoken of as foreign judgments and wills. This was the sense in which it was used by the legislature, and as it will admit of a meaning such as was given it by the legislature, and broad enough to include the provisions of the act, it cannot be held invalid. (*In re Pinkney*, 47 Kas. 89.)

It is argued that it is obnoxious to § 17 of article 2 of the constitution, but we find nothing substantial in the claim, nor in any of the other objections made to the validity of the statute.

It is next contended that the authentication of the will was insufficient, and that therefore the plaintiffs' motion for judgment on the findings should have been allowed. The authentication appears to be substantially correct, but its sufficiency having already been adjudged by a competent tribunal, it is not before us for decision. It appears from the findings that an application was made in the probate court of Lyon county

48—50 KAS.

by the executor to have a copy of the will admitted to record
in that court, and, upon a hearing duly had, it was found that
the will presented was a duly-authenticated copy of the will
of James Calloway, deceased; that it had been executed,
proved and admitted to probate according to the laws of North
Carolina, and that the authentication thereof is in due form
of law; it was further found, that the will related to prop-
erty in Lyon county, Kansas; and upon these findings an or-
der was made that the authenticated copy of the will be
admitted to record in that court and duly recorded.  The
probate court is vested with full power to inquire into the
sufficiency of the authentication and to ascertain whether,
under the proof offered, the will should be admitted to rec-
ord.  Being vested with jurisdiction, its finding and deter-
mination are final, unless corrected upon appeal or proceedings
in error, and are not subject to collateral attack.

The statutes provide that the existence of certain facts are
necessary before a will executed and proved in another state
can be admitted to record in this state.  One of the requisite
facts is, that the copy of such will presented for record shall
be duly authenticated.  This fact is to be determined upon
proof, and the authority to determine it is conferred upon the
probate court. (Gen. Stat. 1889, ¶¶ 2932, 7228.)  Anything
indicating a contrary view in *Gemmell v. Wilson*, 40 Kas. 764,
is not controlling, as in that case the existence of the requisite
facts for admission to the record were conceded.  Under the
statutes, these requisite facts must be determined by the pro-
bate court; and it having exercised the jurisdiction, its deter-
mination, although it may have been erroneous, is conclusive
upon all interested parties and all courts, until it is reversed
or reviewed in some appropriate proceeding. (*Stanley v.
Morse*, 26 Iowa, 454; *Roberts v. Flanagan*, 32 N. W. Rep.
563; *Loring v. Arnold*, 8 Atl. Rep. 335; *In re Shoenberger's
Estate*, 20 id. 1050; *Goldtree v. McAlister*, 23 Pac. Rep. 208;
*Dickey v. Vann*, 8 South. Rep. 195; *Holmes v. Railroad Co.*,
9 Fed. Rep. 229.  See, also, *Howbert v. Heyle*, 47 Kas. 58;
*Higgins v. Reed*, 48 id. 272.)  A duly-authenticated copy of

the will having been properly admitted to record, the executor was authorized to sell the property in controversy, and to confer a good title upon the purchaser. We are clearly of opinion that the purchaser from the executor acquired a good title, and that the plaintiffs in error suffered no injustice by reason of the conveyance.

The judgment of the district court will be affirmed.

HORTON, C. J., concurring.

ALLEN, J., not sitting.