Syllabus.

# Richmond.

## BRYAN v. NASH.

November 18, 1909.

Absent, Buchanan, J.

1. WILLS—*Probate—Copy of Will Probated in Another State—Authentication—Collateral Attack.*—A sentence pronounced by a court having jurisdiction, whether it be admitting a paper to probate or excluding it from probate, as long as it remains in force, binds conclusively not only the immediate parties to the proceeding in which the sentence is had, but all other persons and all other courts. It cannot be collaterally attacked. The same rule applies to the probate of an authenticated copy of a will admitted to probate in another state. The fact of the due authentication of the copy is determined by its admission to probate, and this determination is conclusive on all persons and all courts until it is reversed in some appropriate proceeding. It cannot be collaterally assailed.

2. COURTS—*General Jurisdiction—Special Powers—Collateral Attack on Judgment.*—When a court of general jurisdiction acts within the scope of its general powers, its judgment will be presumed to be in accordance with its jurisdiction, and cannot be assailed collaterally. So also, if it has special powers conferred upon it by statute, which are to be and in fact are exercised judicially, and not merely ministerially, its judgment cannot be collaterally impeached. It is where a court of special jurisdiction has conferred upon it special powers by special statutes, which are only exercised ministerially and not judicially, that no presumption of jurisdiction will attend its judgment, and the facts essential to the exercise of special jurisdiction must appear on the face of the record.

3. APPEAL AND ERROR—*Correct Verdict—Ruling on Instructions.*—The ruling of the trial court on instructions will not be reviewed by this court when, upon the facts proved, there could not properly have been any other verdict than the one rendered by the jury.

Error to a judgment of the Circuit Court of Rockbridge· county in an action of ejectment. Judgment for the plaintiff.. Defendant assigns error.

*Affirmed..*

The opinion states the case.

*Glasgow & White,* for the plaintiff in error.

*G. D. Letcher* and *E. M. Pendleton,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Archie Ranson owned, together with a sister, Alice Ranson, about twelve acres of land in Rockbridge county, with a small' house thereon. Alice Ranson died in the fall of 1901 intestate,. unmarried and without issue, leaving her brother her only heir· at law. Archie Ranson lived the last years of his life in Wash-ington, D. C., and died there April 18, 1902, leaving a will,. which was probated in the probate division of the Supreme Court of the District of Columbia within a few months there-after.

By said will the testator, Archie Ranson, devised his land in Rockbridge county to Addie Nash, to whom he was engaged to· be married. A copy of the will was probated in the Circuit Court of Rockbridge county, and the order of probate is as· follows:

"State of Virginia,
        "At Rockbridge Circuit Court, December 21, 1906.
    "The last will and testament of Archie Lewis Ranson, de-ceased, having been heretofore proved and admitted to probate and recorded in the Supreme Court of the District of Columbia, as appears from an authenticated copy thereof, together with a copy of the proof of the will and copies of orders of probate thereof thereto attached, was this day produced in court. And it appearing that the said will was duly executed as a will of

personalty in the District of Columbia, the testator's domicile, and was so executed as to be a valid will of lands in the State of Virginia by the laws thereof, on motion of Addie Nash, one of the beneficiaries under said will, it is ordered that the said copy of Archie Lewis Ranson, deceased's, will, proved and admitted to probate and certified as aforesaid, be admitted to probate in this court as the last will and testament of the said Archie Lewis Ranson, deceased, both as a will of real and personal estate, and be recorded in the clerk's office of this court. And it is further ordered to be entered of record that the value of the estate passing by the said will in the State of Virginia was estimated at $500.00, and that $1.00 State tax was paid on the probate thereof.

"Teste:      A. T. Shields, Clerk."

This probate proceeding was had pursuant to section 2536, Code, 1904, which is in this language:

"Sec. 2536. *Probate of copy of will proved without the State; to what extent admitted to probate.*—Where a will relative to estate within this State has been proved without the same, an authenticated copy thereof, and the certificate of probate thereof, may be offered for probate in this State. When such copy is so offered, the court to which it is offered shall presume, in the absence of evidence to the contrary, that the will was duly executed and admitted to probate as a will of personalty in the State or county of the testator's domicile, and shall admit such copy to probate as a will of personalty in this State. And if it appear from such copy that the will was proved in the foreign court of probate to have been so executed as to be a valid will of lands in this State by the law thereof, such copy may be admitted to probate as a will of real estate."

It appears that soon after the death of Archie Ranson, W. L. Bryan, whose lands adjoined, desired to purchase the 12 acres of which Ranson died seised, and to that end he, on May 14, 1902, addressed a letter to the "Heirs of Archie Ranson" at Washington, D. C., which letter fell into the hands of a colored

lawyer, Fountain Peyton, counsel for Addie Nash, and who answered Bryan's letter on July 21, and Peyton's letter was replied to by Bryan August 14, 1902. The purpose of this correspondence on the part of Bryan, which was kept up till in April, 1903, was doubtless two-fold—first to ascertain if Archie Ranson had left a will; and, second, to purchase at private sale the 12 acres of land from the rightful owners thereof. A part of this correspondence was conducted by Bryan, claiming to be the next of kin of Archie Ranson residing in Rockbridge county, in which it was represented to Addie Nash that there were debts being asserted against the interest of Alice Ranson in the land, and that unless they were satisfied the land would be sold, etc. At all events, the efforts of Bryan to purchase the land privately having failed, and the will of Archie Ranson not having been up to that time produced and probated in Rockbridge county, a chancery suit was instituted in the Circuit Court of Rockbridge county in August, 1903, by one John A. Ranson, the purpose of which was to have sold the 12 acres of land in question for partition among the plaintiff in that suit and certain defendants, named as the heirs at law of Alice Ranson, deceased, claiming that she had survived Archie Ranson, etc.; and in that suit the said land was sold by a commissioner of the court to W. L. Bryan at public auction, the sale confirmed, the purchase money, $255.00, paid, and a deed of conveyance made and delivered to Bryan, bearing date June 5, 1905.

At the second August rules, 1907, this action of ejectment was brought in the Circuit Court of Rockbridge county by the said Addie Nash against the said W. L. Bryan, to recover the said tract of 12 acres of land claimed by her under and by virtue of the said will of Archie Ranson, deceased, and upon a trial of the cause upon the defendant's plea of the general issue and a special plea of setoffs for improvements to the land, the jury rendered its verdict in favor of the plaintiff for the land, allowing nothing for the defendant upon his plea of set-

offs, and the court entered its judgment upon the verdict, to which judgment this writ of error was awarded the defendant.

The first assignment of error presents the question whether the copy of the will of Archie Ranson, deceased, was properly admitted to probate by the Circuit Court of Rockbridge county on December 21, 1906; the contention being that the copy of the will admitted to probate was never duly authenticated.

There is no merit in this assignment of error. The order of the Circuit Court admitting the will to probate recites every fact prescribed by the statute (section 2536, *supra*) necessary to the court's jurisdiction to enter it, and, being a court of general jurisdiction for the probate of wills, its judgment is final, and cannot be collaterally attacked.

In an elaborate argument, citing a great number of authorities, it is urged that there are irregularities in the certification of the execution of the will and of its probate in the probate court of the District of Columbia; but to follow up the argument and to review the authorities cited in support of it would be but going over the same ground that this court has gone over again and again to the conclusion repeatedly announced, that "a sentence pronounced by a court having jurisdiction, whether it be a sentence admitting a paper to probate or excluding it from probate, as long as it remains in force, binds conclusively not only the immediate parties to the proceeding in which the sentence is had, but all other persons, and all other courts." That was announced as the state of the law in *Connolly* v. *Connolly,* 32 Gratt. 657, and has since been adhered to. Many of the decided cases that had gone before the case of *Connolly* v. *Connolly* were cited, and we shall refer to a few of them.

In *Lancaster* v. *Wilson,* 27 Gratt., 629, referring to a judgment of probate of a will holding that such judgment is conclusive and final as to collateral attack, the court said: "It is not merely an arbitrary rule of law, established by the courts, but is a doctrine founded upon reason and the soundest principles of public policy. It is one which has been adopted in

the interest of the peace of society, and the permanent security of titles."

Plaintiff in error relies on section 3342 of the Code in support of the contention that the copy of the will of Archie Ranson admitted to probate in the Circuit Court of Rockbridge county was not duly authenticated; but with that statute, which merely prescribes how the records and proceedings of another State, or of the United States, are to be authenticated in order that they shall have faith and credit given them in the courts within this State, we are not concerned in this case. What would have been the force and effect of the statute had there been an appeal taken from the decision of the Circuit Court of Rockbridge county admitting the will of Archie Ranson to probate we are not called upon to determine in this litigation. As we have remarked, the order of the court admitting the will to probate recites every fact necessary to its jurisdiction under the statute (section 2536, *supra*), and whether its judgment was in the exercise of the court's powers as a court of general jurisdiction, or if special powers conferred upon it by the statute touching the probate of wills, as was unquestionably the case, the judgment is final and cannot be collaterally attacked. It is where a court of special jurisdiction has conferred upon it special powers by special statutes, which are only exercised ministerially and not judicially, that no presumption of jurisdiction will attend its judgments and the facts essential to the exercise of special jurisdiction must appear on the face of the record.

"When a court of general jurisdiction acts within the scope of the general powers, its judgments will be presumed to be in accordance with its jurisdiction, and cannot be collaterally impeached.

"When a court of general jurisdiction has conferred upon it special powers by special statute, and such special powers are exercised judicially, its judgment cannot be collaterally impeached." *Pulaski County & Stuart* v. *Buchanan & Co.*, 28 Gratt., 872.

As said in *State of California* v. *McGlynn*, 20 Cal., 233,

81 Am. Dec. 118: "The probating of a will is not a proceeding to decide a contest between parties, but a proceeding *in rem,* to determine the character and validity of an instrument affecting the title to property, and which it is necessary for the repose of society should be definitely settled by one judgment; and, therefore, the decree of probate is conclusive, not only upon the parties who may be before the court, but upon all other persons and upon all courts. The danger which might be apprehended from holding as conclusive, upon so important a matter as the probate of a will, the decree of a single court, and that not of the highest jurisdiction, is guarded against by the right of appeal to the Supreme Court, and by the statutory provision allowing the decision to be opened and the validity of the will to be again contested in the same court by any one interested, within one year from the admission to probate."

To the same effect is *Schultz* v. *Schultz,* 10 Gratt., 358, and in a note to a report of that case in 60 Am. Dec., at p. 353, the authorities are collated, and among those cited are *Ballou* v. *Hudson,* 13 Gratt., 682; *Norvell* v. *Lessueur,* 33 Grat., 222; *Connolly* v. *Connolly, supra.*

The case of *Norvell* v. *Lessueur, supra,* is directly in point here, and reiterates that it is a settled rule of law in Virginia that the admission of a will to probate generally is conclusive of its validity, both as a will of realty and personalty, which cannot be drawn in question, except on an issue *devisavit vel non* within the time and in the mode prescribed by the statute.

In that case the opinion by Staples, J., reviews many of the prior decisions of this court, citing them with approbation, including *Robertson* v. *Allen,* 11 Gratt., 787, where the will of a married woman was admitted to probate in the County Court of Fauquier, although at the date of the will a married woman could not make and publish a valid testamentary paper; but this court held that as the will appeared to have been regularly admitted to probate in the proper court, its validity could not be questioned collaterally.

In 1 Woerner on Am. L. of Administration, sec. 145, following a discussion of the powers of judicial tribunals, the conclusiveness of their judgments in collateral proceedings is considered; and after speaking of the development and growth of the jurisdiction of courts of probate in the United States, and stating that it has given occasion to considerable divergence of authority on the question, whether their judgments are conclusive or impeachable collaterally, it is said: "The uncertainty produced by the vacillation of courts in this respect is not only perplexing to the administrators, practitioners, and judges, but injurious and sometimes ruinous to the interests of all persons concerned in the administration of estates; and particularly to the purchasers of real estate sold under the order of probate courts, who sometimes lose the fruits of their purchase because the officers of the court are not sufficiently skilled or careful to let the record show all jurisdictional facts; and to the heirs or creditors, because the risk incurred by purchasers depresses the price of the property at the sale." But, continues the learned author, "on principle there seems to be no difficulty attending the question, except, perhaps, to ascertain whether the tribunal intrusted with jurisdiction in probate matters is *a court,* with *judicial functions* in the common law sense, or whether its functions are *ministerial only,* or having no authority beyond special powers for the performance of specific duties not relating to the general administration of justice. If the latter be the case, it is obvious that, to give validity to its acts, it must affirmatively appear that everything necessary to such end has been observed. But if it be found that the tribunal is one competent *to decide* whether the facts in any given matter confer jurisdiction, it follows with inexorable necessity that if it decides that it has jurisdiction, then its judgments within the scope of the subject matter over which its authority extends, in proceedings following the lawful allegation of circumstances requiring the exercise of its power, are conclusive against all the world, unless reversed on appeal, or avoided for error or fraud in a direct

proceeding.  It matters not how erroneous the judgment; being
*a judgment,* it is *the law* of that case, pronounced by a tribunal
created for that purpose.  To allow such judgment to be ques-
tioned or ignored collaterally would be to ignore practically, and
logically to destroy, the court.  And it is not necessary that the
facts and circumstances upon which the jurisdiction depends
shall appear upon the face of their proceedings, because, being
competent to decide, and having decided, that such facts exist
by assuming the jurisdiction, this matter is *adjudicated,* and
cannot be collaterally questioned."  Among the authorities cited
in support of the text just quoted is *Cox* v. *Thomas,* 9 Gratt.,
323.

It is argued, however, by the learned counsel for the plain-
tiff in error in this case, that the law as laid down in the au-
thorities to which we have referred, does not apply to the pro-
bate of an authenticated copy of a will.  This view, however,
cannot be sustained by any authority to be found in the de-
cisions of this or other courts.  We have not been able to find
a decision of this court covering directly the point made, but it
has been dealt with in a number of cases decided in other States
and adversely to the view contended for by the learned counsel
for plaintiff in error; and the case of *Calloway* v. *Cooley,* 50
Kan. 743, 32 Pac. 372, is directly in point.  It was there held
that "Where a will executed, proved and admitted to probate in
another State is presented for record to the probate court of a
county in this State, in which land belonging to the estate is
situate, and such court, upon the evidence submitted, finds and
adjudges that the authentication of the copy presented for re-
cord is sufficient, its adjudication thereon cannot be collaterally
attacked."  Again, the opinion, at page 754 of 50 Kan., at page
376 of 32 Pac., says: "The probate court is vested with full
power to inquire into the sufficiency of the authentication,
and to ascertain whether under the proof offered the will
should be admitted to record.  Being vested with jurisdic-
tion, its findings and determination are final, unless corrected
upon appeal or proceedings in error, and are not subject to

collateral attack.   The statutes provide that the existence of
certain facts are necessary before a will executed and proved
in another State can be admitted to record in this State.   One
of the requisite facts is that the copy of such will, presented
for record, shall be duly authenticated.   This fact is to be de-
termined upon proof, and the authority to determine it is con-
ferred upon the probate court.   .   .   .   Under the statutes
these requisite facts must be determined by the probate court;
and it having exercised the jurisdiction, its determination, al-
though it may have been erroneous, is conclusive upon all in-
terested parties, and all courts, until it is reversed or reviewed
in some appropriate proceeding."

In that case it appears, as in this case, that only a certificate
of the facts proved and the fact of probate were certified, and
the statute of Kansas was to the same effect as section 2536 of
our own Code, *supra,* expressly requiring an authenticated copy
of the will and the certificate of the probate thereof.   In other
words, the statute provides, that when a copy of a will relative
to estate within this State is presented for probate in this State,
the copy presented shall be authenticated by a certificate of the
probate thereof in the court of another State.   And this is ex-
actly what was done in this case, as shown by the order of the
Circuit Court of Rockbridge county admitting the will here in
question to probate.   See also *Whalen* v. *Nesbit,* 95 Ky., 464,
26 S. W., 188, dealing with a statute of Kentucky similar to
the Virginia statute, section 2536, *supra.*

Having taken the view that the Circuit Court did not err in
admitting in evidence in this case the will of Archie Ranson
probated in the Circuit Court of Rockbridge county, it becomes
unnecessary to consider the assignments of error relating to the
instructions given by the court, for the reason that upon the
facts proven before the jury there could not have been any other
verdict than the one rendered by the jury in favor of the plain-
tiff, Addie Nash, for the land in question.

Nor do we deem it necessary to consider the argument made
by the learned counsel, that the plaintiff, Addie Nash, is estop-

ped to set up title to the land in question, since the facts abundantly show that the same doctrine might with equal propriety be invoked by her against the defendant Bryan. The plaintiff, under section 2547-a of Va. Code, 1904, had seven years from the date of the death of the testator, Archie Ranson, within which to probate the will before the Circuit Court of Rockbridge county, having jurisdiction for that purpose, and therefore she was wholly within her rights when she did offer the will for probate in December, 1906; and there is nothing in the testimony in this case even tending to show that she purposely or otherwise deceived or misled the defendant, Bryan, while, on the other hand, there is proof that Bryan knew that the plaintiff, Addie Nash, was claiming the land in question under and by virtue of a will executed by Archie Ranson and probated in the District of Columbia in 1902, and wrongfully undertook to acquire title to the land from sources other than the rightful owner.

Upon the whole case we are of opinion that the judgment of the Circuit Court of Rockbridge should be affirmed.

*Affirmed.*