ISAAC KEELER *et al.* v. C. LAUER *et al.*
No. 14,431.   (85 Pac. 541.)

ISAAC KEELER *et al.* v. BENJAMIN HEILBRUN,
*as Trustee, etc.*
No. 14,432.   (85 Pac. 541.)

JOSEPH CAUFFMAN *et al* v. C. LAUER *et al.*
No. 14,433.   (85 Pac. 541.)

SYLLABUS BY THE COURT.

1. WILLS—*Testamentary Trust—Discretion Given the Trustee—Validity.* A testamentary trust authorized the trustee, who was the husband of the testatrix, to sell the property of the estate and invest the proceeds as he might deem best, and to appropriate so much of the estate to the education and maintenance of the children of the testatrix as the trustee might deem necessary. It provided, also, that no bond should be required of the trustee, nor a report of his doings to the court, but that he should have full power to sell and dispose of the trust property as his judgment might dictate, so long as the proceeds should be applied to the purposes of the trust. *Held,* that the large discretion vested in the trustee did not invalidate the will.

2. —— *Trustee Subject to Control of a Court of Equity.* Notwithstanding the powers and discretion given to the trustee he is subject to the direction and control of a court of equity, which will have full power to prevent mismanagement of the estate and to correct any abuses of the trust.

3. —— *Duration of Trust—Limitation—Rule against Perpetuities.* A provision in the will that the trust is to terminate and the estate vest in the beneficiaries within twenty-one years, or within the common-law period, does not offend the rule against the creation of perpetuities.

4. —— *Probate of Will—Contest—Limitation of Action.* An order probating a will determines its due attestation, execution, and validity, and an heir or other interested person must contest the will, if at all, within two years from the time of probate, unless such person is under legal disability.

5. —— *Creditor of an Heir—Right to Contest.* A creditor of an heir who claims that the devised property has passed to the heir occupies no better position, at least, and has no greater right to contest the will, than the heir himself.

6. —— *Consent to Will—Need Not be Probated.* A consent of the husband that the wife may bequeath and devise more

than one-half of her property is not to be regarded as a part of the will, and it is not necessary that it should be admitted to probate.

7. ———— *Consent May be General.* The law does not require that such consent shall specify the particular property which may be so bequeathed and devised, nor that it shall particularly designate the will to which the consent applies.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed April 7, 1906. Affirmed.

### STATEMENT.

SEVERAL creditors of Benjamin Heilbrun caused levies of executions to be made upon real estate in which it was claimed Heilbrun had an interest, acquired by inheritance from his wife. These suits were brought to enjoin the sale of the land upon the executions, claiming that the property had passed by will of Carrie Heilbrun, in whom the title had rested, to her children. The following is a copy of the will:

"I, Carrie Heilbrun, of the county of Osage and state of Kansas, being of lawful age and of sound and disposing mind and memory, but fully realizing the uncertainty of human life, do make, publish and declare the following as my last will and testament, hereby revoking all former wills by me at any time heretofore made:

"I give, bequeath and devise all my real and personal estate of what nature or kind soever to my husband, Benjamin Heilbrun, in trust for the sole benefit, behoof and use of my children that may survive me. My said husband, Benjamin Heilbrun, is to hold all of said property as trustee only, and it is my will that in acting as such trustee he shall not be required to give bond or report his doings to any court. I hereby direct that my said trustee shall have full power to sell any real estate of which I may die seized, and invest the proceeds or any part thereof in other real estate, with like power of sale; and I hereby direct that he may sell any other property which may come into his hands in such trust capacity, with power to reinvest the proceeds or any part thereof with like power of sale.

"I hereby direct my said trustee to use and appropriate so much of the trust estate as may in his judgment be deemed necessary for the proper support, maintenance and education of my said children. It is

my will and I hereby appoint and constitute my said husband, Benjamin Heilbrun, the sole trustee and financial agent of my estate for the benefit of my children, and in so doing my intention is not to hamper his movements but to give him full authority to sell and dispose of any of the property as his judgment may dictate, so long as the proceeds are applied according to the manner heretofore set out, but no person paying money or other thing of value in its stead to my said trustee upon my said trustee's receipt shall be liable to see to the application or be answerable for the misapplication or new application of the same.

"The said trust shall continue and be in force until my youngest child shall have arrived at the age of twenty-one years, at which time my said trustee shall proceed to divide the trust estate in the manner following, that is so say: To each of my children I direct my said trustee to give, pay over and transfer an equal portion of my trust estate as it then shall be found to consist of, to each child share and share alike; and in the event any of my said children shall have died leaving issue at the time of said division of said estate, then the said issue shall take the part that his, her or their parent would have taken had they been living; it being my intention that only such of my children as shall be living at the termination of said trust, and the living issue of such of my children as may have died before that time, shall participate in the distribution of my said trust estate.

"For his services as such trustee said Benjamin Heilbrun shall be allowed such sum annually as it may require to compensate for the necessary time and labor expended in behalf of said estate.

"I hereby nominate and appoint said Benjamin Heilbrun the sole executor of this my last will, and I direct that he shall not be required to give surety on his official bond. This will is typewritten on two sheets of paper.

"In witness, I have hereunto set my hand, this 9th day of April, 1901. CARRIE HEILBRUN.

"Signed, sealed, published and declared by said testator, Caroline Heilbrun, as and for her last will and testament, in the presence of us, who, at her request, in her presence and in the presence of each other, have hereunto subscribed our names as witnesses, this ninth (9th) day of April, 1901. GUSTAV WOLF.
JENNY WOLF."

Keeler v. Lauer.

The same day on which the will was made Benjamin Heilbrun executed a consent to the making of such a will. It reads:

"I, Benjamin Heilbrun, of Osage county, and the state of Kansas, of lawful age, and being of sound mind and memory, do hereby and herein consent that my wife, Carrie Heilbrun, of Osage county, state of Kansas, give, will and devise and bequeath from me, the undersigned Benjamin Heilbrun, more than one-half of all the property she may own or be entitled to, both real and personal, at the time of her demise.

"Further, I, the said Benjamin Heilbrun, do consent that my said wife may give, will and devise and bequeath all of her said property of whatsoever kind or nature to her children, or to any other person she may name, as her heirs at law, in any will she may make and publish, all to the exclusion of any and all rights I, as her said husband, have under the laws of the state of Kansas.

"In witness whereof, I have hereunto set my hand, this 9th day of April, A. D. 1901.

BENJAMIN HEILBRUN.

"Signed, sealed and delivered by said Benjamin Heilbrun as and for his consent given that his said wife, Carrie Heilbrun, may give, will, devise and bequeath her property from him, in the presence of us, who, at his request, and in his presence, and in the presence of each other, we have hereunto subscribed our names as witnesses, this 9th day of April, A. D. 1901.

BEN LAUER.
CHARLIE A. ANDERSON."

The creditors answered and attempted to contest the execution and validity of the will, claiming that Benjamin Heilbrun had an interest in the land which was subject to execution. The court found against the claims of the creditors and enjoined the sale of the land under the executions. The creditors complain.

*Charles S. Briggs, W. W. Harvey,* and *Buck & Spencer,* for plaintiffs in error; *Overmyer & Overmyer,* of counsel.

*Thomson, Stanley & Price, McLaughlin & Messerley,* and *J. E. Jones,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: The title to the land sought to be subjected to the payment of the judgment against Benjamin Heilbrun was in his wife, Carrie Heilbrun, at the time of her death. While her ownership has not been exactly conceded, it is not seriously attacked. In one part of the answer there was a general statement that real and personal property of Benjamin Heilbrun was placed in his wife's name for fraudulent purposes, but there is no allegation that the property in question had ever been owned by him, nor that it was fraudulently acquired or held by her. The case must be determined on the theory that she was the owner of the land when it was devised and until her death.

It is contended that the terms of the will betray a wrongful purpose; that they are such as to render the instrument ineffective, and therefore one-half of the land passed to Benjamin Heilbrun at his wife's death. Nothing is found in the provisions of the will to avoid or discredit it. Large discretionary powers were conferred upon the trustee, it is true, but that was a matter for the testatrix, and after specifying particularly the purposes for which the estate should be devised she evidently deemed it advisable to leave the management of it to the discretion of the trustee.

One feature of the will is a provision that the trustee shall not be required to give bond or report his doings to a court. He is authorized to sell any of the real estate and invest the proceeds, and to sell and reinvest as he may deem best; to appropriate so much of the estate as he may think necessary for the support, maintenance and education of the children; and there is expressed in the will an intention not to hamper his movements, but to give him full authority to sell and dispose of the property as his judgment may dictate, so long as the proceeds are applied to the purposes of the trust, that is, for the benefit of the children, and an equal division of the estate among them when the

Keeler v. Lauer.

youngest child should arrive at the age of majority.
The omission of a bond is not unusual, and the at-
tempted waiver of a report of the trustee's doings to
a court does not destroy the will. The provision
evinces a purpose of relieving the trustee of making
reports that an ordinary executor would be required
to make.

The trust is within the scope of equity jurisdiction,
and the trustee is subject to the power and direction
of the court whenever there might be an occasion for its
exercise. Upon complaint of the beneficiaries that the
estate was being mismanaged or the trust abused they
could safely appeal to the jurisdiction of the court
for the protection of the estate. Neither this provision
nor those vesting great discretionary power in the
trustee, nor even the possibility of the abuse of the
power by the trustee, furnishes any reason for declar-
ing the trust invalid. It has been said that, "as a gen-
eral rule, a court of equity will not interfere with or at-
tempt to exercise discretionary powers conferred on
trustees. But the court never loses its power to review
the use of such discretion and to correct any abuse in
its exercise. Moreover, equity will always so control
a trustee that he shall not disappoint the true intent
and purpose of the donor, as gathered from the instru-
ment containing the power." (28 A. & E. Encycl. of L.
991. See, also, page 985.)

The contention that the will is void because it vio-
lates the rule against the creation of perpetuities is not
good. There is no remoteness in the vesting of the es-
tate, and it is to be noted that, instead of providing
for a suspension of alienation, the will itself authorizes
the trustee to sell and convey the land at any time.
The trust is to terminate and the property to pass to
the children when the youngest child arrives at the
age of twenty-one years. Having no statute on the
subject the common-law rule prevails, under which the
contingent interest must become vested within a life
or lives in being and twenty-one years afterward, to

which, under some circumstances, is added the period of gestation. (22 A. & E. Encycl. of L. 708; Gray, Rule against Perpetuities, 2d ed., § 201.) If the contingency on which the estate is to vest must certainly happen within the common-law period, it does not offend the rule. As the minority of the youngest child comes within the gross period added to a life in being there is no room for disagreement. It is held, too, that the term of twenty-one years may be taken in gross, without reference to infancy, and the devise is not too remote if the contingency must happen within that period. (*Barnitz's Lessee v. Robert Casey,* 11 U. S. 456, 468, 3 L. Ed. 403; *Potter v. Couch,* 141 U. S. 296, 314, 11 Sup. Ct. 1005, 35 L. Ed. 721; *Johnston's Estate, Johnston's Appeal,* 185 Pa. St. 179, 39 Atl. 879, 64 Am. St. Rep. 621; *Cadell v. Palmer,* 1 Cl. & F. [Eng.] 372; *Von Brockdorff v. Malcolm,* 30 Ch. Div. 172; Gray, Rule against Perpetuities, 2d ed., §§ 186, 223; 22 A. & E. Encycl. of L. 709.)

The contingency, as we have seen, must happen within twenty-one years, and under any view the estate will vest within the common-law measure of time. The recent case of *Coleman v. Coleman,* 69 Kan. 39, 76 Pac. 439, is quite closely in point. There a will was made giving an estate to children of the testator, but providing that the real estate should not be sold until the youngest child should reach majority. In the opinion it was said:

"It is finally contended that the limitation over, and the estate sought to be conferred thereby, is void for remoteness, and created a perpetuity prohibited by law. This claim is not well founded. Three of the testator's children were living when the will was made; the other child was born prior to his death, and the fee to the proceeds of the property in question was to vest in them when the youngest child became of age." (Page 45.)

The New York cases cited are based on a statute which does not conform to the common-law rule, and hence are not controlling.

The attack of the creditors of Benjamin .Heilbrun upon Mrs. Heilbrun's will is collateral in character, and somewhat in the nature of a contest. The will is not open to contest, as it was probated and its validity established more than two years before the attack was made. Then, the matter of probate being within the jurisdiction of the probate court, its judgment in the premises is not open to collateral attack. (*Calloway v. Cooley,* 50 Kan. 743, 754, 32 Pac. 372; *Proctor v. Dicklow,* 57 Kan. 119, 45 Pac. 86; *Watkins v. Mullen,* 62 Kan. 1, 61 Pac. 385, 84 Am. St. Rep. 372.) The order of probate determined the due attestation, execution and validity of the will, and in the absence of a contest within the appointed time it is forever binding, except as to those under legal disability. (Stat. Wills, §§ 19-21; Gen. Stat. 1901, §§ 7956-7958.)

It is contended that the will is not effective, nor the probate of it conclusive, because the consent of the husband that the wife might bequeath and devise all her property to her children was not presented to the probate court and probated. The statute does not declare that the consent is to be regarded as a part of the will, nor that it shall be probated. We cannot interpolate a clause that such consent shall be invalid unless it is proved and recorded. In the giving of consent such formalities are required as that it shall be in writing, and executed in the presence of two witnesses, and if the legislative purpose was that it should be filed, recorded, or probated, these things certainly would have been included with the other requirements.

It is contended, also, that the consent must be to a particular will, and that the one in question is ineffectual because it is general. The statute controls, and it does not provide that the consent of husband or wife shall specify the particular pieces of property which the other may will away. On the other hand, it is general in its terms, stating that the husband or wife may consent "that the other may bequeath more that one-half of his or her property from the one so

consenting." (Stat. Wills, § 35; Gen. Stat. 1901, § 7972.) In the present case, however, it appears that the will and consent bear the same date, and being contemporaneous in execution may well be considered as having been made with reference to each other.

After the death of his wife Benjamin Heilbrun went through the form of electing to take under the will. If the provision of the statute in regard to a widow's election applies to the widower, which we need not now determine, it is clear that the attempt made did not nullify or weaken the consent already given. The consent was sufficient for the purpose, and no further step was necessary. But probably it was not then within his power to revoke the consent previously given. With this consent Mrs. Heilbrun had a complete right to dispose of all her property by will. The will made is in due form, and the order probating it determined its due execution and validity.

Only interested persons can contest the will, and it may well be doubted whether the creditors of the husband can be regarded as entitled to that right. In *Lockard et al. v. Stephenson*, 120 Ala. 641, 24 South. 996, 74 Am. St. Rep. 63, it was held that the words "any person interested therein" include only such persons as would take an interest in the estate of the testator under or by virtue of a provision of the will, and it was there said that "judgment creditors of the husband of a testatrix have not, under the statute, . . . such an interest as gives them a right to contest the probate of the will of the testatrix, by which a child is made the sole legatee and devisee and the husband is deprived of his distributive share in the property of his wife." (Syllabus.) In Page on Wills, section 325, it is said that "the creditors of an heir of decedent cannot contest decedent's will disinheriting such heir by reason of creditor's hopes or expectations of being paid out of the heir's share of decedent's estate." (See, also, *Shepard's Estate, Appeal of Shepard et al.*, 170 Pa. St. 323, 32 Atl. 1040; *Cochran v. Young*, 104 Pa.

St. 333.)   Even if the creditors could be substituted to the rights of Benjamin Heilbrun the time had passed in which he could have instituted a contest of the will, and in no event could his creditors have any better standing to contest than he had.

It follows from what has been said that no error was committed by the court in overruling the demurrers to the amended petitions, nor in sustaining the demurrers to several of the defenses of the answers.   The evidence, including that relating to the acceptance of the trust by the trustee, abundantly sustains the judgment of the trial court, and, no error appearing in the records, the judgments in the several cases are affirmed.

All the Justices concurring.