In re Trusteeship of Hattie M. Cool.

Hattie M. Cool, Appellee, v. Ralph Shepherd, Appellant.

No. 40015.

April 14, 1930.

*Swan, Martin & Martin,* for appellant.

*Dalton & Knop,* for appellee.

Grimm, J.—On the 16th day of September, 1927, the plaintiff, who is the beneficiary under a trust created by the will of her father, filed a petition in equity in the district court of Cass County, Iowa, asking for an order of the court requiring the trustee to pay over the entire income from the trust estate to the beneficiary, "and that a sufficient part of the principal be each year turned over to plaintiff as may be needed for her care, support, and maintenance, medical attention, clothing, board, room, personal care, and attention which is necessary for plaintiff to have, and for such other and further relief as may seem just and equitable, together with costs of this action."

To this the trustee answered with a general denial and a reference to the various reports filed by him in the estate, and by way of special defense he pleads a previous adjudication by means of a decree previously filed (1924) in Equity No. 9561 of the records of that county. The trustee alleges that he has fully abided by the provisions of said decree.

By way of reply, the plaintiff denies all the affirmative defense as set up in the answer, and specifically denies that she is precluded by reason of any decree hereinbefore referred to, and further, plaintiff alleges "that, since rendition of the decree aforesaid, the conditions have been changed, and the facts now presented and will be presented to the court will show the plaintiff's condition has changed so that the said order should be modified and changed so as to fit her condition at present, and that the said cause be held open so same may be changed, from time to time, as plaintiff's condition demands."

The father of the plaintiff set aside a fund of $25,000 in trust, which trust, among other things, provides as follows:

"I authorize, empower and direct said trustees, Ralph Shepherd and C. P. Shearer, to pay, annually, to my said daughter, Hattie M. Cool, during the term of her natural life, the income arising from the investment of said sum of twenty-five thousand dollars, the same to be her own property for her use for or toward her care, support and maintenance, and if at any time the income arising from the investment of said sum of twenty-five thousand dollars shall be insufficient for the good, proper and comfortable care, support and maintenance of my said daughter, Hattie M. Cool, then the principal sum of twenty-five thousand dollars shall be resorted to for that purpose and I authorize, empower and direct said trustees, Ralph Shepherd and C. P. Shearer to pay out for and on her behalf all or any part of said principal sum of twenty-five thousand dollars which may be necessary or required in addition to the said income thereof to give and provide my said daughter, Hattie M. Cool, during her lifetime, with good, proper comfortable care, support and maintenance, the intention being that my said daughter, Hattie M. Cool, shall have and receive, during the term of her natural life, out of and from said sum of twenty-five thousand dollars and the income thereof, a good, proper and comfortable

care, support and maintenance, if it takes all of said sum and the income thereof for that purpose.''

The balance remaining in the hands of the trustee after the death of Hattie M. Cool passes to the grandchildren, of whom the said trustee Ralph Shepherd is one. The defendant, Ralph Shepherd, is the sole remaining trustee.

At the time of the trial, which began November 9, 1928, Hattie M. Cool was 53 years of age. In November, 1924, a similar trial was had, and a decree was entered as of November 1, 1924, to which we will hereafter refer.

During all the time in controversy in this case, the beneficiary has been living in the home of her sister, Alice Morgan, the wife of A. K. Morgan, who lives on a farm near Massena, Iowa. The beneficiary is afflicted with epilepsy, and since the former trial, has lost her eyesight. It is claimed that it is necessary to have someone with her constantly. At the time of the former trial, while her eyesight was bad, she was, nevertheless, able to move about; while, within the last two years prior to the trial of the case at bar, she became totally blind. She has been afflicted with epilepsy for over 30 years. At times, she has four or five attacks in one night, and at other times, she will go a week or ten days without having any; but apparently there is no way of telling when they are about to come on. It is claimed that these spells became much more frequent within the year prior to the time of the last trial. At times, it takes several hours for her to fully recover, and from a severe spell, she sometimes does not recover for a day and a half or two days. When in one of these spasms, it becomes necessary to keep her from injuring herself—pulling out her hair and biting her tongue. She is apt to fall anywhere, without warning. Those in charge of her claim that, therefore, it is necessary to have someone with her all the time. She has lived with her said sister Alice for more than seven years, and it is apparent from the record that she receives every possible care and attention which the sister and brother-in-law and the niece can give her.

The beneficiary was herself a witness. She complained that she needed money with which to secure treatment for her eyes, which she could not have because of lack of funds. She complained that she was badly in need of dentistry, and with-

out funds to procure proper treatment. She complained because she needed more money with which to buy more clothing, and, as she says: "I want a little chance to get out, if I could. I would like to go and visit some of my people."

Without incumbering the record with an extended recital of the testimony, it very clearly appears, beyond question, that there was, at the time of the trial of the case at bar, a decided change in the condition of the beneficiary from her condition at the time of the decree in 1924. The beneficiary had failed very noticeably, and because of her blindness, she required much more care and attention, and in other ways she had grown worse.

I. The trustee, appellant herein, complains that the decree of November 1, 1924, was an adjudication, and as such, was a bar to this action. The court decreed in 1924 that the income  from the funds in the hands of the trustee ought to be sufficient to care for the needs of the plaintiff. The court directed the trustee to "pay the plaintiff the net income *until further order of this court.*" (Writer's italics.) It will thus be seen that the trial court, by the express terms of the decree, retained jurisdiction of the matter for further orders.

Furthermore, it is within the power of court, upon a proper plea of changed conditions, to take testimony and determine what should be done by the trustee, in the light of the then existing conditions. *Keating v. Keating,* 182 Iowa 1056.

The appellant contends that the court erred in finding that the conditions had materially changed since the hearing in 1924. The record has been very carefully read, and abundant basis for the holding of the court is found. To set out the testimony would unduly extend this opinion, and be of no value to the profession.

II. It is the contention of the appellant that a court of equity should not interfere with the discretion of the trustee in administering this trust. While it is true that, generally  speaking, courts will not interfere with a discretion lodged in a trustee, in the absence of a showing that the trustee is abusing the power, or acting in an arbitrary or capricious manner,

nevertheless, " 'there can be no doubt that, however large the discretion of trustees may be, the court never loses its power to review the use of this discretion, and, if need be, to correct any abuse of its exercise.' " *Keating v. Keating,* 182 Iowa 1056.

This court in said case quoted with approval the following from *In re Van Decar,* 49 Misc. Rep. 39 (98 N. Y. Supp. 309) :

" '* * * when it appears that any trustee, no matter how broad the discretion which is bestowed upon him, is so administering his trust that it *fails to accomplish the purpose for which it was created,* then, it seems to me, the time has come for the court to intervene." (Writer's italics.)

Further, this court said :

"It is also admitted that, so long as the trustee keeps within the limits of fairness in his dealings with the subject of his trust and with the beneficiary, the courts may not arbitrarily interfere, or control the manner in which he shall discharge his duty. We think it equally true that no trust has been or can be created in property where the discretion of the trustee is so broad or illimitable that equity will not entertain a complaint by the beneficiary that the trust has been or is being abused, or that the property is being wrongfully diverted to the destruction or defeat of the purpose for which the founder established it. This is quite definitely put to rest in this state, both by statute (Code Section 3293 [Section 11876, Code of 1927] ), and by the recent decision of this court in *In re Clark,* 174 Iowa 449, where Mr. Justice Salinger, writing the opinion, very pertinently and forcibly says that 'to give the maker of a will the prerogative of completely ousting the courts of jurisdiction in the premises is to allow him to nullify the statute which gives the court control of the trustees appointed by will, even to the extent of removal.' Even in the absence of statute, the authority to entertain complaints alleging improper or arbitrary and unreasonable conduct of trustees in the administration of trusts has long been held to be inherent in courts of equity. Of the many authorities to that effect, see the following: *Keeler v. Lauer,* 73 Kan. 388 (85 Pac. 541) ; *Colton v. Colton,* 127 U. S. 300 (32 L. Ed. 138) ; *Angell v. Angell,* 28 R. I. 592 (68 Atl. 583) ; *Gardner v. O'Loughlin,* 76 N. H. 481 (84 Atl. 935) ; *In re Van Decar,* 49 Misc. Rep. 39 (98 N. Y.

Supp. 309) ; *Collister v. Fassitt*, 163 N. Y. 281 (57 N. E. 490) ; *Woodward v. Dain*, 109 Me. 581 (85 Atl. 660) ; *Clark v. Clark*, 23 Misc. Rep. 272 (50 N. Y. Supp. 1041) ; *Kintner v. Jones*, 122 Ind. 148 (23 N. E. 701) ; *Bacon v. Bacon*, 55 Vt. 243 ; *McDonald v. McDonald*, 92 Ala. 537 (9 So. 195) ; *Butler v. Badger*, 128 Minn. 99 (150 N. W. 233) ; *In re Norton*, 97 Misc. Rep. 289 (161 N. Y. Supp. 710) ; *Albright v. Albright*, 91 N. C. 220." *Keating v. Keating*, 182 Iowa 1056.

In a case of this kind, one of the important inquiries is, What was the intention of the testator in creating the trust?

"The court should, from the will and its attendant circumstances, endeavor to ascertain the intention of the testator, and so far as practicable, without violating the terms of the instrument, carry the intention into effect." *Fleming v. Casady*, 202 Iowa 1094.

The language of the trust in this case is plain and unmistakable. It is clear that the testator not only intended that the entire income from the trust fund should become the property of the beneficiary, but also that so much of the principal as might be necessary should be used to furnish her with "good, proper and comfortable care, support and maintenance * * * if it takes all of said sum and the income thereof for that purpose."

The trial court ordered the trustee to pay to the beneficiary the sum of $130 per month, whether the same be available out of the income or not. The beneficiary owns a small property, which, a part of the time, brings $25 a month.

We think that, on the whole record, in view of the condition of the beneficiary at the time of the trial, her failing condition, and her necessity for medical attention and clothing, and in view of the necessity of constant attention, because of her blindness and her other afflictions, the court's decree is correct; and it follows that the cause must be, and is,—*Affirmed.*

Morling, C. J., and Evans, Faville, and Kindig, JJ., concur.