IN RE TRUSTEESHIP UNDER WILL OF ELLEN LAWSON.

No. 41519.

OCTOBER 25, 1932.

Heindel & Hunt, for appellant.

Chas. C. Heninger and F. M. Beatty, for appellee.

Kindig, J.—John Lawson, the appellant, is the son of Ellen Lawson, now deceased. Ellen Lawson died testate. In her will, she provided for appellant as follows:

"I hereby give, devise, and bequeath to my son John Lawson [appellant], the income from one half of my estate, both real and personal of which I may die seized, and it is my intention that he shall not have more than the income of such real and personal estate. The principal property to be preserved intact until his death when it shall be equally divided among his children who survive him."

Furthermore the testator provided in the will that the trustee was to have "*control of said estate,* trust and principal and to be *empowered to invest the principal and estate for the* use of my son John Lawson *in the best possible manner to secure the greatest returns therefrom,* said returns to be turned over to John Lawson semi-annually. * * * I hereby request said trustee to invest the above principal *at a greater rate of interest than that to be paid by banks if possible* and consistent with the security of the fund. I hereby request my trustee to *sell* any real estate coming under this provision *if in his opinion a greater income can be obtained by converting it into personal property."* (Italics are ours.)

Arthur Bottorff, the appellee, was appointed trustee under the will, and duly qualified and is now acting as such. The appellee, as such trustee, undertook to execute the trust. On June 8, 1925, the

appellee, as trustee, invested trust funds in the amount of $3,053.80 in the following bonds:

1. No. 3190, $1,000, Jackson Towers, First Mortgage Serial Gold Bonds, 6½%, total issue $1,600,000, appraised value of security $2,500,000.
2. No. 771, $1,000, Hotel Alcazar, First Mortgage Serial Gold Bonds, 6½%, total issue $400,000, appraised value of se-curity $650,000.
3. No. 36 and No. 37 for $500.00 each, Diversey Arms Apart-ments, First Mortgage Serial Gold Bonds, 6½%, total issue $155,000. Appraised value of security $237,500.

Thereafter, on November 23, 1925, the appellee, as trustee, re-ported the purchase of the aforesaid bonds to the district court and obtained an ex-parte order approving the investment. Interest was regularly paid on the bonds, as provided in each, until the early part of the year 1930. It is conceded by all parties that the bonds when purchased were worth the amount paid therefor. Not only that, but it is likewise admitted that the reasonable market value of the bonds remained substantially the same until the early part of the year 1930. A great financial panic overtook the country in 1929 and the makers of the bonds did not pay the interest due in the latter part of the year 1930. Foreclosure action was begun by the trustees under the bonds, and each bond here involved is now under the process of foreclosure. The record does not indicate what will be finally realized on these bonds for the trust estate. Because the interest was not paid when due, the appellant, being the beneficiary under the trust, complained of the default, and on May 9, 1931, commenced the present proceeding in probate to compel the ap-pellee as trustee and his bondsman to account for the amount in-vested in the bonds and repay the principal and interest represented thereby, to the trust estate for the use and benefit of the appellant.

As explained in the preliminary statement, the district court denied this relief, and the appellant appeals. Two propositions on this appeal are argued by the appellant. They are: First, that the appellee, as trustee, did not obtain an order of court authorizing the investment before he purchased the bonds, but rather, made the purchase without the authorization and then sought to justify him-self by procuring a belated ex-parte order of court; and, second, that in no event could the district court authorize or approve the

investment because the real estate securing the bonds was not worth twice the value thereof, as required by Section 12772 of the 1924 Code. These propositions will now be considered in the following order.

█ I. At the outset, it is contended by the appellant that the trustee under no circumstances could invest the proceeds of the trust estate without a prior order of court. Consequently it is concluded by the appellant that a subsequent order of court approving and ratifying the previous act of the trustee is insufficient.

During the discussion of this proposition, it is assumed, without deciding, that notwithstanding the directions in the will and the provisions of the 1924 Code, an order of court is necessary to authorize the appellee, as trustee, to invest the trust funds. Even under the assumption, it is not necessarily essential that the order of court be procured before the investment is made. To illustrate, the law relating to guardianship proceedings requires that a guardian shall manage the ward's estate under order of court; yet it has been said many times that the order approving an investment of the ward's funds under proper limitations may be procured after the investment has been made. In re Guardianship of Benson, 213 Iowa 492; Robinson v. Irwin, 204 Iowa 98; Cronk v. American Surety Company, 208 Iowa 267; Easton v. Somerville, 111 Iowa 164; Valley National Bank v. Crosby, 108 Iowa 651.

"A guardian who proceeds with the management of his wards' estate without a previous court order authorizing the act, of course, faces the hazard that the court afterward may not ratify or approve the same. Such unauthorized proceeding on the guardian's part is entirely at his risk, because the court might not later validate the action." In re Guardianship of Benson (213 Iowa 492), supra.

By analogy, at least, the cases relating to guardianship proceedings are applicable here. In the case at bar, the trustee succeeded in obtaining the order of court approving and ratifying the investment approximately five months after the same had been made. The funds remained thus invested for nearly five years thereafter before complaint. Throughout the interval between the time of the investment and the time of procuring the order of court approving the same, there had been no loss.

According to the stipulation of the parties, as before said, the bonds at the time purchased were worth the amount paid therefor,

and that condition continued for many years after the order of court had been procured. Clearly, then, there was no detriment to the estate from the time the investment was made until the date of the court order. After the court order, the trustee was authorized to continue the investment. See cases above cited. When applying for the order of court, the trustee was guilty of no fraud, over-reaching, or sharp practice. All the facts were fully disclosed to the court. Unquestionably, under all the circumstances, the court had a right to make this belated order.

"It is a general rule that, unless prohibited by some statutory provision, the court may approve an act which it might have authorized or directed to be done, and with the same effect." Robinson v. Irwin (204 Iowa 98, local citation 101), supra.

There appears no statutory or any other reason why the district court should not have approved and ratified the investment of the trustee in the case at bar. While it is true, as claimed by the appellant, that under a previous order the trustee was authorized to deposit the trust funds in a specified bank, yet the effect of that order was merely to make such bank a depository for trust funds. So, when the trustee later used the funds to make the investment under consideration, he was simply carrying out the direction of the will previously set forth, to wit, to so invest the proceeds of the estate as to obtain more interest than that paid by the bank.

Obviously the district court had a right to approve and ratify that investment. Then it is clear that the funds were invested under an order of court.

II. But the appellant argues that even though the foregoing be true, nevertheless the order of court is of no validity because it was obtained without notice in a mere ex-parte proceeding. No claim is made by appellee that the order was obtained after notice. On the other hand, the appellee argues that notice was not essential under the circumstances.

Section 10764 of the 1924 Code declares:

"It [the district court] shall have jurisdiction in all matters in relation to the appointment of executors and trustees, and the management and disposition of the property of and settlement of such estates; * * *"

The district court controls and manages the property thus in its

custody under the statute, and the trustee acts under the direction of the court. See In re Harsh Estate, 207 Iowa 84.

Consequently, within proper limitations, notice is not essential when the trustee desires an order of court relating to the management of the trust property. Hagy v. Avery, 69 Iowa 434 (local citation 437, 438); Kreamer v. Wendel, 204 Iowa 20 (local citation 26); Bennett v. Ryan, 206 Iowa 1263 (local citation 1268). Of course, if, as in some states, notice is required, the order would be of no validity without it. In re Seward's Guardianship, 181 N. W. 941 (Neb.); In re O'Brien's Estate, 113 N. W. 1001 (Neb.). In Iowa, however, there is no such statute, and the order for the purposes in question may be made without a notice. What was said in Hagy v. Avery (69 Iowa 434), on pages 437, 438, in reference to an ex-parte order obtained by a guardian, by analogy applies to such order obtained by the trustee in the case at bar. There it is suggested:

"This is not an adversary proceeding of the guardian against the ward, but, in seeking to obtain the requisite authority from the court, the guardian is subserving the interest of his ward."

Likewise, in the proceeding under consideration, the trustee was not acting adversely to the beneficiary of the trust, but rather, in making the investment he obtained the requisite authority from the court to subserve the very interests of the trust. To the same effect see the other cases last above cited.

It has been held by this court that orders given on interlocutory reports and accounts may be reviewed when the estate is finally settled. Current annual reports, when given ex-parte approval, have "no 'greater effect than prima-facie evidence of accuracy of the account as stated therein.'" Des Moines Sav. Bank v. Krell, 176 Iowa 437 (local citation 444).

See also, In re Kimble v. Dailey, 127 Iowa 665. The argument is made for the appellee that this rule relating to accounts has no application to the position of a trustee who seeks in advance to obtain authority to perform an important act in the management of the trust estate. If the order received in good faith can be reviewed on a later hearing and set aside in the absence of fraud, overreaching, or underhandedness, then the appellee says that no trust officers ever would be safe in managing an estate even under an order of court. Whether the rule governing ex-parte orders obtained on

interlocutory reports and accounts applies to an order of the kind in question we find it unnecessary to, and therefore do not, decide. We here assume, without deciding, that the district court had a right to review the order aforesaid. No controlling facts existing at the time the order was made were concealed from the district court, but all such facts were fully set forth at the time the order was obtained. Under the order in the case at bar, appellee would not be protected, had he failed to reveal to the district court controlling facts which related to the particular management of the trust estate.

Moreover, had the trustee, in making such application for the order of court in question, acted fraudulently and in bad faith, and thereby obtained the approval of his actions by overreaching and underhandedness, he would not be protected when the proper attack is made on his actions. Upon this subject we said in Bennett v. Ryan (206 Iowa 1263), supra, on page 1268:

"It goes without saying that the guardian must act in good faith in obtaining such an order, and that such order may be later set aside upon the ground of fraud or bad faith of the guardian in obtaining the same."

For like authorities upon this proposition, see In re Harsh Estate (207 Iowa 84), supra; Cronk v. American Surety Co. (208 Iowa 267), supra.

The appellee, in the case at bar, however, indulged in no fraud, overreaching, or underhandedness when applying for the order in question. He acted in the utmost good faith. This, in effect, is conceded under the record. It is true that there may be a loss in this investment, but the loss, if any, will arise apparently because of the unprecedented depression which afflicted our country in the year 1929. According to the concession of the parties, as before stated and repeated, the bonds in question were worth the amount paid when purchased, and continued to be worth that amount for approximately five years thereafter. So, under all the record, it is clear that the appellee obtained the order of court approving and ratifying the investment in the best of faith. All facts were fully revealed to, and none concealed from, the district court.

Therefore, the district court properly held that the appellee is protected under the order.

III. By way of further attack upon the order aforesaid, the appellant continues his argument by suggesting that the district

court in any event had no power to approve and ratify the investment in question because of Section 12772 of the 1924 Code, which was in force in 1925. That section, so far as material, reads:

"Where investments of funds are to be made, including those to be made by executors, administrators, trustees, and guardians, and no mode of investment is pointed out by statute, they may under order of court be made: * * *

"2. In bond or mortgage upon real property of the clear unencumbered value of twice the investment. * * *"

At this juncture, the appellant argues that the bonds in question were not secured "upon real property of the clear, unincumbered value of twice the investment." There is some difficulty in finding the amount of the claimed excessiveness of the incumbrances, because some bonds appear to have been retired after the original issue. But, for the purposes of this discussion, it will be conceded, without determining, that the bonds in question are not exactly those authorized by the statute. Nevertheless, this does not mean, under the circumstances of this case, that the district court did not have the right to approve and ratify the investment. Section 12772, above quoted, contains the word "may," and provides that the investments contemplated by the statute "may be made." In the 1897 Code, the corresponding section contains the word "must," instead of "may." Statutes of this kind, under some circumstances and for certain purposes, have been declared to be permissive, and not exclusive. Robinson v. Irwin (204 Iowa 98), supra. Under the 1931 Code, the corresponding section is much broader than the same section in the 1924 Code, and apparently gives the district court discretion in matters of this kind. For many years it has been the policy of this state to permit testators in wills, where creditors are not prejudiced, to prescribe "the entire manner in which the estate shall be administered." Section 11955 of the 1924 Code. Nowhere does it appear in the record before us that this principle is not to be applied even to Section 12772 of the Code. What was said by the legislature in Section 12772 necessarily must have been subject to the directions of the testator, authorized by Section 11955 of the Code. Although the language in Section 11955 appears to refer to how an estate is to be administered, that is no reason why under the will the word "administer" cannot include the execution of a trust, so far as Section 12772 is concerned. Plainly Section 12772 was not intended

by the legislature to apply to the execution of a trust under a will where the trustor had placed the control and management of the estate in a trustee. These two sections, under the circumstances, must be read together, because it is obvious that the legislature did not intend Section 12772 to operate as a repeal or modification of Section 11955. When the terms of a will direct differently than a statute of the kind in question, the will must prevail, and the statute merely becomes permissive, because, under proper limitations not here involved, the testator has a right to dispose of his property in the manner deemed best to him, and, as trustor, can determine the management of the estate.

"Having accepted the trust" the trustee "is bound to exercise it in a manner pointed out in the will." MacGregor v. MacGregor, 9 Iowa 65 (local citation, 81); Merchants' Loan & Trust Co. v. Northern Trust Co., 95 N. E. 59 (Ill.); Willis v. Braucher, 87 N. E. 185 (Ohio); In re Allis' Estate, 101 N. W. 365 (Wis.); Lawson v. Cunningham, 204 S. W. 1100 (Mo.); Fox v. Harris, 119 A. 256 (Md.). Concerning statutes similar to Section 12772 of the Iowa Code, now under consideration, the Supreme Court of Ohio, in Willis v. Braucher (87 N. E. 185), supra, reading on page 187, said:

"It is perhaps enough to say of this statute that it is permissive. It provides for situations where the instrument constituting the trust does not otherwise provide. Undoubtedly it indicates a general policy; a policy of carefulness in the handling of trust funds; it points out a course free from risk, and affords a certain sure method by which the trustee may secure an affirmation of the legality of his investment in advance. So that, as a matter of prudence, resort to the methods indicated may be strongly commended; but the statute does not afford any special aid in determining the question involved in the case at bar, unless it be ascertained *that the will gives no added authority to the trustee.*" (Italics are ours.)

Continuing on the bottom of the next column, the Ohio court further declared:

"We cannot conceive that this language (in the will) imports a purpose to limit the power of the trustee to the ordinary powers incident to such trusts, or to confine his conduct as to investments within the narrow compass of the statute. On the contrary, it lodges

with the trustee the most ample authority not only to sell the property in such manner as his judgment should dictate, but to invest and reinvest the proceeds in any manner to such trustee deemed best. Can it be possible that the testator intended or expected that the trustee would be governed by any statute inconsistent with the expressed purpose of the will? We think not. Had that been the intent no provision such as is found would have been necessary."

According to the will in question, it is evident that the testator did not desire his trustee to confine himself, when managing the estate, to securities named in Section 12772. But rather, the testator desired his trustee, when handling the estate's funds, to make that investment which would bring the greatest income consistent with the security of the fund. As shown in the statement of facts, the will gave "control of the estate" to the trustee and "empowered" him "to invest the principal and estate for the use and benefit of" the appellant. Such investment was to be made "in the best possible manner to secure the greatest returns therefrom." Furthermore, the trustee was empowered and directed "to invest the above principal at a greater rate of interest than that to be paid by banks if possible." Not only that, but the trustee was authorized by the trustor to sell the real estate and reinvest the funds if, in his opinion, the income would be greater. It is true that the trustor, in creating the trust, suggested to the trustee that the investment should be "consistent with the security of the funds." However, it is manifest that the trustor did not limit the trustee to the securities named in Section 12772 of the 1924 Code, but rather conferred upon him discretion in the premises. The "control and management" of said trust estate was placed in the trustee under the will with the right to exercise judgment in the management and control thereof. Such discretion and judgment to be exercised by the trustee include the power to determine where the funds should be invested under the terms of the will, without regard to the limitations of Section 12772. Had the trustor intended his trustee to be controlled by this statute, he would have said so in the will. Rather than so doing, the trustor indicated that he did not desire the trustee to be controlled by the investment statute otherwise applying to such trust, because the trustor plainly indicated in the will that he desired the estate managed and controlled in such a way as to produce a high rate of interest and the greatest income, even to the extent that real estate,

at the option of the trustee, could be converted into money for investment purposes. Clearly the trustor desired the trustee to so manage the estate that it would produce the required interest, rather than to observe the statute above named in matters of investment.

Hence, it appears beyond doubt that the trustee under the circumstances is not confined to the securities named in Section 12772, but may so invest the funds of the estate that the greatest income consistent with the security of the trust funds will be obtained.

Next it is necessary to determine whether the trustee in the case at bar did invest the trust funds in the manner and way directed by the will. Undoubtedly the testator did not want the trustee to speculate with the trust funds. Nevertheless the testator emphatically directed the trustee "to invest" the trust funds "in the best possible manner to secure the *greatest* return therefrom." In other words, the trustor crowded his trustee to the fullest extent in order that the greatest income would be obtained. An investment for "the greatest return" might be consistent with the security of the trust fund, the district court could find under this record, although the bonds purchased were protected by real estate of a slightly less value than that contemplated by Section 12772 above named. Evidently the testator did not intend to confine his trustee to the securities named in the statute. The will gave "control of the estate" to the trustee and "empowered him" to invest the principal and estate for the use and benefit of the appellant.

Section 12772 does not pretend to fix the only safe security for an investment, but rather it was the purpose of the legislature, in adopting that section, to provide therein for a security considered by the law-making body as safe. Other securities might likewise be safe. A bond secured by real estate of a slightly less value than that referred to by Section 12772 might nevertheless be consistent with the security of the trust fund, as required by the will in the case at bar, if the management of the property and the rentals therefrom were sufficient and adequate. Generally speaking, a better security can be found for a low than for a high rate of interest. This, however, depends upon the facts and circumstances of each case. In the case at bar, the property produced a large annual income, and the management thereof appeared to be safe and sound. It is admitted by the appellant, as stated and restated, that, when purchased, the securities were worth the value paid therefor, and that such value continued for years thereafter. Even now, it does

not appear that the property has been lost because the bonds are involved in a foreclosure proceeding. Concerning what will result therefrom, the record does not reveal. Obligations secured by good securities are sometimes uncollectable without a foreclosure proceeding.

Under all the circumstances, then, the trustee was not bound, when selecting securities for investment, to purchase those named in Section 12772 of the 1924 Code, because the trustor, through his will, had given to the trustee, under specific directions, the management and the control of the estate. See Section 11955, Code 1924. Acting under that power and authority, the trustee selected securities that were worth the purchase price. Consequently, under all the record the district court was justified in ratifying and approving the act of the trustee in purchasing the bonds in question on the theory that the trustee acted under the directions given him by the trustor in the will. This is true regardless of the aforesaid Section 12772 of the 1924 Code.

Wherefore, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

STEVENS, C. J., and EVANS, FAVILLE, ALBERT, and BLISS, JJ., concur.