· In re Estate of William E. Skinner.

In re Trusteeship of Luracy Skinner et al.

Henry W. Skinner et al., Objectors, Appellees, v. Roy H. Skinner, Trustee, Appellant.

No. 41618.

March 14. 1933.

Tobin, Tobin & Tobin, for appellant.

William H. Salisbury and H. R. Duncan, for appellees.

KINDIG, C. J.—On February 10, 1922, a trust agreement was entered into by and between Luracy Skinner, Henry W. Skinner, Roy H. Skinner, Ben B. Skinner, and Emma E. Skinner. According to the terms of this trust agreement, Roy H. Skinner, the appellant, was to become the trustee, and Henry W. Skinner and Ben B. Skinner the objectors and appellees, and Luracy Skinner and Emma E. Skinner were to be the beneficiaries. Roy H. Skinner, the appellant, was appointed trustee under the foregoing contract by the district court. He then qualified by furnishing bond. When thus qualified, the trustee managed the trust estate, and, in so doing, invested and reinvested moneys. In accordance with the terms of the trust agreement, the trust was to terminate on the death of Luracy Skinner.

Following the death of Luracy Skinner, the trustee, compelled by an order of the district court, filed with the clerk of that court, on April 8, 1930, his "general" or final report. Henry W. Skinner and Ben B. Skinner objected to this report, and the issues between the objectors and trustee were tried to the district court. That tribunal, on January 15, 1932, found for the objectors on grounds 5, 6, 8, and 9 of the objections. Objection 5 related to a loan of $310; objection 6 had to do with a loan of $3,000; objection 8 covered two items, one of $5,500 and the other of $10,500; and objection 9 embraced the sum of $6,783.32. The bases for these objections were that the trustee loaned the trust money to himself, purchased land for himself therewith, and improved such land with the trust funds. According to the claims of the objectors, the trustee thus used the trust funds without an order of court permitting the same or the knowledge and consent of the beneficiaries.

After sustaining the objections above named, the district court ordered the trustee to account in cash for the aggregate amount involved in the objections.

Generally speaking, the appellant trustee asks a reversal of the judgment of the district court thus entered on two grounds: First, because the district court did not have jurisdiction of the controversy

in probate; and, second, because the trustee acted in good faith on advice of counsel and made investments that were good at the time, and therefore the beneficiaries of the trust should accept such investments in their present status.

■ I. Did the district court, sitting in probate, have jurisdiction to grant the relief asked by the objectors? This is the first question. It is argued by the appellant that the trust arose through a contract, and consequently the district court in probate has no jurisdiction thereof. See Reeder v. Reeder, 184 Iowa 1, 168 N. W. 122; Arnette et al. v. Watson, 203 Iowa 552, 213 N. W. 270; Kreamer v. Wendel, 204 Iowa 20, 214 N. W. 712.

At this juncture, it is admitted that the district court, as a court of equity, under some circumstances would have jurisdiction of the trust (Keating v. Keating, 182 Iowa 1056, 165 N. W. 74; In re Trusteeship of Hattie M. Cool, 210 Iowa 30, 230 N. W. 353; In re Estate of Holley, 211 Iowa 77, 232 N. W. 807); but the appellant contends that it does not have such jurisdiction in probate when the trust is created by contract, as in the case at bar. Before the controversy can be finally determined, it is essential to consider the following, and another, section of the Iowa statutes. Section 10764 of the 1931 Code provides:

"It [the district court] shall have jurisdiction in all matters in relation to the appointment of executors and *trustees*, and the management and disposition of the property of and settlement of such estates; * * *" (Italics are ours.)

A similar provision may be found in section 225 of the 1897 Code, which was in effect at the time of the creation of the trust. In order to understand the significance of this section to the case at bar, it is essential to here set forth a rather extended statement of the steps leading up to the district court's appointment of the trustee under the contract.

William E. Skinner died intestate in Mitchell county on January 17, 1922. He was survived by his widow, Luracy Skinner, his daughter, Emma E. Skinner, and his sons, Henry W. and Benjamin B. Skinner, the appellees, and Roy H. Skinner, the appellant. Roy H. Skinner, the appellant, on February 10, 1922, was appointed administrator of the William E. Skinner estate. The appellant, as such administrator, administered his father's estate, and on March 16, 1923, his final report was approved by the district court, and he

received his discharge from further duties as such administrator. While the appellant thus acted as the administrator of the William E. Skinner estate, he, on July 31, 1922, was appointed guardian for the property of his sister, Emma E. Skinner, above named, an incompetent. So, when the appellant as administrator made final distribution of the property of the William E. Skinner estate, he delivered the share of his incompetent sister to himself as her guardian and receipted accordingly. During that time, the contract creating the trust above named was entered into whereby the appellant was to become the trustee of the property formerly held by himself as administrator of the William E. Skinner estate.

Before the appellant as such trustee, however, received the property of the William E. Skinner estate, he made application to the district court to be appointed trustee. In appellant's application to be thus appointed is the following prayer:

"Wherefore, he (the appellant) asks the court to make appointment of the undersigned as such trustee, upon approval of bond by the clerk of said court, and that he (appellant) be authorized to perform all of the duties of trustee as stipulated by said agreement and *by the orders of the court.*" (Italics are ours.)

Upon presentation of said application, the district court made the following order:

"Upon reading the foregoing application it is ordered that Roy H. Skinner (the appellant), the applicant be and he is hereby appointed as trustee in accordance with the terms of the agreement attached to this application (the contract before mentioned), and his appointment shall become effective upon approval of his bond in the sum of $30,000 by the clerk of said court, and he is authorized to receive the assets of said estate (the William E. Skinner estate) which belong to the trust fund under the terms of said agreement *and to handle them* in accordance with the terms of said agreement and *the orders of court.*" (Italics are ours.)

A bond was filed as required by the district court, and letters of administration were issued to the appellant as trustee by the clerk of the district court March 17, 1923. When the appellant, as such trustee, received from himself, as administrator of the William E. Skinner estate, the assets of that estate not held by himself as guardian, he receipted as trustee in an instrument filed in the probate

court in the proceedings under which he was appointed such trustee; that is to say, the appellant purported at all times to act under his appointment by the district court.

Emma E. Skinner, the incompetent, died December 14, 1924. Accordingly, Roy H. Skinner, the appellant, on January 9, 1925, filed his final report as such guardian. The funds of the guardianship were inherited by Luracy Skinner, the mother of Emma. Whereupon she assigned such funds, under the trust agreement, to the appellant as trustee. After that assignment, the appellant accepted the additional trust and continued to hold, under the contract, the proceeds of the Emma E. Skinner estate, as trustee for the beneficiaries named in the trust contract.

Luracy Skinner, the widow of William E. Skinner, died March 9, 1928. Consequently, it is apparent that all the property of the William E. Skinner estate is now held by the appellant as trustee. While this trust was contemplated by the contract before mentioned, it clearly arose nevertheless through the appointment of the district court. That appointment was in probate, as contemplated by section 10764, before quoted. The appointment by the district court was broad enough to cover the additional, as well as the original, trust under the agreement. Every step in the trust proceedings was based upon the appointment by the probate court. Because the appellant, as such trustee, did not report, the beneficiaries on April 8, 1930, filed an application with the district court in probate asking for a general report. Complying with an order issued on that application, the appellant, as trustee, filed in the probate proceedings his general report purporting to set forth his actions in the execution of the trust. To this report, the objections of the appellees were filed. Obviously it has always been the thought of the appellant himself that his authority as such trustee was acquired by and through his appointment, as such, by the district court. The appellant asked for such authority from the district court, accepted it from the court, and qualified under the order granting it.

Section 11876 of the 1931 Code provides:

"Trustees appointed by *will or by the court* must qualify and give bonds the same as executors, and shall be *subject to control* or removal by it [the court] in the same manner, and others appointed."

A similar provision may be found in section 3293 of the 1897 Code. While it is true that the bounds of the appellant's authority

as such trustee may, within reasonable limitations, have been fixed by the contract, as argued by the appellant (Keating v. Keating, 182 Iowa 1056, 165 N. W. 74, supra; In re Trusteeship of Cool, 210 Iowa 30, 230 N. W. 353, supra; Kreamer v. Wendel, 204 Iowa 20, 214 N. W. 712, supra), yet his authority, under the statutes above quoted, to exercise those powers thus fixed was, under the circumstances, clearly conferred upon him by the district court. This is apparent from the history of the transaction as above outlined, step by step.

It is obvious, then, under the circumstances of this case, that the district court in probate had jurisdiction to consider and reject the appellant's general report as such trustee. Likewise, the district court under the record had the jurisdictional power to compel the appellant to properly account as such trustee.

II. But the appellant argues that although the district court did have jurisdiction, it erred under the circumstances in holding the trustee liable to account in cash for the trust funds invested by him. This is true, the appellant declares, because he executed the trust under the strict terms of the contract. When so doing, the appellant asserts that he invested the money involved on the advice of counsel, and that the loans made are good although not collectible at the present time.

The appellant concedes that he did not obtain an order of court at the time he invested any item of the trust funds. Also the appellant admits that when making these investments he did not inform the beneficiaries thereof or obtain from them authority so to do. As a matter of fact, the appellant loaned the money to himself. On an occasion or two he used the name of another person merely as a "straw man." Underlying these transactions, however, was the personal interest of the appellant. Trust funds were used to purchase land which the appellant now owns. So, too, trust money was used to improve these lands. In the final analysis, these moneys were loaned by the appellant as trustee to himself as an individual. It was admitted by the appellant that "the 325 acres of land (of the land in question) known as the Wilson land, is along the Cedar River. There is some brush on it, some timber, some sand, and the general character of the soil is light; about one-third of it is farm land but it is not of the fine character of farms away from the Cedar River on either side. It is very doubtful if the clearing of the brush land would pay for itself. The McCaslin land (of the land in ques-

tion) on which there is a $5,500 mortgage is 179.23 acres. There is in the neighborhood of 75 acres of that land cleared and can be farmed. The rest of the land is timber and brush. Some hills on the 179 acres. It joins the Cedar River on the north. There is some light soil on the 179 acres." At another place in his testimony, the appellant conceded that the land could not be sold at this time. Likewise, the appellant admitted that the notes secured by the mortgages on this land cannot be collected now.

According to the trust contract, the funds received by the trustee were to "be kept in trust * * * for the use and benefit of the parties to (the) agreement, subject to the terms thereof, and he (the trustee) shall keep the same invested at all times as nearly as may be practicable, and to as good advantage as possible, preferably in municipal bonds or like securities". Under paragraph 6 of the trust agreement, the trust was to terminate on the death of Luracy Skinner. Upon the termination of the trust, the trustee under the agreement was required to deliver the trust assets to the beneficiaries to the end that such beneficiaries shall receive "an equal portion or share of the entire estate of said William E. Skinner, together with any additions thereto or deductions therefrom". Within the terms of the trust agreement, then, it was the duty of the appellant as trustee to invest the trust funds "to as good advantage as possible, preferably in municipal bonds or like securities". Nowhere in the trust agreement is there any indication that the trustee was thereby authorized to loan trust moneys to himself.

All of the conduct of the appellant trustee in managing the trust estate was without the authority or direction of the district court. Section 10764 of the 1931 Code, supra, provides:

"It [the district court] shall have jurisdiction in all matters in relation to the appointment of executors and trustees, and the management and disposition of the property of and settlement of such estates; * * *"

As before said, a similar provision appears in previous Codes. Under and by virtue of that statute, the trustee in the case at bar can manage and dispose of the trust property only under the authority and direction of the district court. Blain v. Blain, 215 Iowa 69, 244 N. W. 827; In re Lawson's Will, 215 Iowa 752, 244 N. W. 739. There is an analogy between the powers and duties of a trustee and

that of a guardian. In re Brubaker's Guardianship, 214 Iowa 413, 239 N. W. 536.

"Guardians, in the management of their wards' estates, can only act under the authority of the court." In re Guardianship of Laverne Pharmer et al., 211 Iowa 1285, 235 N. W. 478, 479; In re Benson's Guardianship, 213 Iowa 492, 239 N. W. 79.

Whether the district court would ever be justified in authorizing the trustee to borrow from the trust estate, we do not now decide or suggest, for it is enough for the purposes of this discussion to indicate that the appellant as trustee did not obtain such authority from the district court, either before or after making the investment.

Furthermore, if the trust funds were to be loaned by the trustee upon the security of farm mortgages, the investment must, in such event, have been "to as good advantage as possible". Moreover, the measure of the kind and class of securities under the trust contract is municipal bonds. At the time of the transactions in question it evidently would have been possible for the trustee to have obtained mortgage investments secured on good first-class lands. Obviously, then, the loan by the appellant as trustee to himself was not authorized by the trust agreement. The appellant as trustee in the case at bar failed to accomplish the very purpose for which the trust was created. In re Trusteeship of Cool (210 Iowa 30, 230 N. W. 353), supra. His action in loaning the money to himself with only partial security, and that evidently insufficient, is bound to result in loss to the estate if the beneficiaries of the trust are required to accept the property now remaining in the trustee's hands. A trustee must act in good faith for the benefit of the trust estate. He is bound not to do anything which would place him in a position inconsistent with the interests of the trust. In re Estate of Holley, 211 Iowa 77, 232 N. W. 807; Walker v. Howell, 209 Iowa 823, 226 N. W. 85; Richardson v. Union Mortgage Co., 210 Iowa 346, 228 N. W. 103.

We said in Linsley v. Strang, 149 Iowa 690, reading on page 694, 126 N. W. 941, 942, 128 N. W. 932:

"It is a general principle that a trustee must act with the most scrupulous good faith. The one great duty arising from this fiduciary relation is to act in all matters relating to the trust wholly for the benefit of the beneficiary. A trustee will not be permitted to manage the affairs of his trust, or to deal with the trust property, so as to

gain any advantage, either directly or indirectly, for himself. These principles require no citation of authority in their support. The common sense of honesty dictates such rules."

In the case at bar it is evident that the trustee acted for his own benefit rather than for that of the trust estate. When loaning the trust moneys to himself, the trustee acted secretly for his own benefit without the knowledge or consent of the beneficiaries. It is apparent also, as before indicated, that the security now offered to the beneficiaries by the trustee in his report is not that contemplated by the trust contract. On the other hand, such security is far below the standard set by the trust agreement.

■ ■ Nevertheless, it is argued by the appellant that the district court was not justified under the entire record in finding that the appellant, as trustee, breached the trust and, in fact, converted the proceeds thereof. An argument is made by the appellant at this juncture on the theory that the appellees used the appellant as their witness, and consequently are bound by his testimony. During his examination, the appellant was asked the following question: "Q. Did you have in mind at the time you made this loan from yourself as trustee to yourself individually, that you were saving one and one-half per cent interest per annum on a certain amount each year?" To that interrogatory the appellant replied: "No." Therefore, the appellant concludes that, the appellees having made him their witness, they are bound by his testimony. In the first place, the question only relates to a narrow phase of the controversy. It has some relation to the appellant's good faith in the premises. On the other hand, there are many phases of the dispute not involved in the interrogatory.

A witness thus called cannot be impeached by the introduction of evidence tending to show that his reputation for truth and veracity is not good. Homesteaders' Life Ass'n v. Salinger, 212 Iowa 251, 235 N. W. 485. But under the rule thus announced, the appellees in the case at bar, although not being permitted to impeach the appellant, could, nevertheless, show that the evidence given by him was a mistake and not according to the facts. Homesteaders' Life Ass'n v. Salinger (212 Iowa 251, 235 N. W. 485), supra. Throughout the record, there are many facts and circumstances tending to overcome the statements of the appellant. We said, when discussing a similar question in Johnson v. Warrington, 213 Iowa 1216, 240 N. W. 668, reading on page 669:

"The credibility and probative value of the testimony of an adversary is subject to proper analysis, comparison with other testimony, with the physical facts, the circumstances shown in evidence and in the light of common experience and with due regard to the nature of the transaction or facts sought to be proven. The evidence must be analyzed, interpreted, and considered as a whole. Every proper inference may be drawn therefrom."

So, in the case at bar, in view of the appellant's testimony, the admissions, and all the facts and circumstances in the case, it is apparent that the district court could properly find, as it did, that the appellant breached his trust, appropriated the trust funds to his own use, and, in fact, converted the same.

 But the appellant contends that he was justified in making the investments because he was advised to do so by an attorney at law. There is much doubt whether or not the appellant received such advice from an attorney. Assuming, however, that he did, he even then was not justified or protected in making the investments. The statute requires an order or direction of court and not the advice of counsel. Such advice of counsel in the premises cannot be substituted for the order and direction of court. If the investment is illegal and unauthorized, it cannot be made legal and authorized by the advice of some attorney. American & English Encyclopedia of Law (2d) vol. 1, 897, III. See, also, State v. Sheeley, 15 Iowa 404; State v. Gould, 40 Iowa 372; Weston v. Commonwealth, 111 Pa. 251, 2 A. 191; Barnett v. State, 89 Ala. 165, 7 So. 414; Brewer v. Jacobs (C. C. Tenn.) 22 F. 217.

Hence the district court properly required the appellant to account in money for the funds thus used. See Brookhart v. Younglove, 207 Iowa 800, 218 N. W. 533; Walker v. Howell (209 Iowa 823, 226 N. W. 85), supra; Richardson v. Union Mortgage Co. (210 Iowa 346, 228 N. W. 103), supra.

Other matters are argued, but they are not of sufficient importance to demand a reversal.

Wherefore, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

STEVENS, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.